**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION
1:15-cv-12984-NMG**

NATIONAL FEDERATION OF THE BLIND, on behalf of their members and themselves,
MARK CADIGAN, MIKA PYYHKALA,
LISA IRVING, ARTHUR JACOBS,
JEANINE KAY LINEBACK,
and HEATHER ALBRIGHT, on behalf of themselves and all others similarly situated)
     Plaintiffs,

        v.

THE CONTAINER STORE, INC.,
     Defendant.

## <u>AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs National Federation of the Blind ("NFB"), Mark Cadigan, Mika Pyyhkala, Lisa

Irving, Arthur Jacobs, Jeanine Kay Lineback, and Heather Albright (collectively "Plaintiffs"), on

behalf of themselves and all others similarly situated, for their Complaint against Defendant,

state and allege as follows:

## <u>INTRODUCTION</u>

1.    This class action seeks to bring an end to discriminatory actions committed by

Defendant The Container Store, Inc. ("The Container Store" or "Defendant") against blind

people in Massachusetts and throughout the United States.  Defendant is knowingly denying

blind individuals throughout the United States equal access to the goods and services it provides

to its sighted customers who shop at its retail stores.

2.    Blind customers at many of The Container Store's locations cannot pay for

merchandise with a debit card by entering a secure Personal Identification Number ("PIN") at the

register when purchasing goods or services, and cannot enter a PIN for a credit card transaction

if one is required.  Blind persons also cannot participate in The Container Store's promotional programs without having to verbally disclose their email address or phone number.   The Container Store has failed to provide the same access to its blind or visually impaired customers that its sighted customers enjoy, and has compromised the privacy and security of its blind customers by forcing them to disclose private information in order to participate in The Container Store's loyalty program, POP! – Perfectly Organized Perks ("POP! Program" or "Loyalty Program").

3.     Many blind persons, including Plaintiffs, shop at The Container Store's numerous locations throughout the United States.  They are entitled to the same privileges and advantages that are available to sighted customers – the ability to choose their payment method, and to obtain the benefits and discounts available to other customers without compromising their privacy.  By providing point of sale devices ("POS Devices") that make use of an exclusively visual, touch screen interface that is inaccessible to the blind, The Container Store prevents blind customers from independently entering a secure PIN in order to make a debit card purchase, or to consummate a credit card purchase that requires a PIN.  And by providing access to its Loyalty Program via touch screen interfaces at its stores, The Container Store requires its blind customers to publicly disclose their personal telephone number or email address in order to register or receive continuing benefits.

4.     The Container Store's failure to provide tactile keypads at all of its store locations is especially surprising given that eleven of its seventy stores are based in California, where tactually discernible POS Devices have been explicitly required since 2010.  In addition, more than a year ago, the Department of Justice ("DOJ") – the administrative agency charged by Congress with implementing the requirements of the ADA – made public its position that

2

merchants throughout the United States (and not just in California) **are required** to provide blind or visually impaired customers a physical keypad or other alternative means to securely input their PIN numbers when purchasing goods or services.  *See New v. Lucky Brand Dungarees Stores, Inc.*, No. 1:14-cv-20574, (S.D. Fla. April 10, 2014) (hereafter referred to as "*New*").

5.      Notwithstanding these clear legal requirements, and despite readily available accessible technology, The Container Store has failed to provide accessible POS Devices at all of its stores.

6.      When Plaintiffs notified The Container Store of these issues, rather than promptly replace its inaccessible POS Devices, The Container Store created plastic overlays to place on its existing inaccessible POS Devices so they appear to be accessible to the blind.  Although The Container Store was in communication with NFB at the time it created and distributed its "Accessibility Overlay," The Container Store did not seek NFB's input or guidance on the contours of the overlay.  As a result, the overlay is completely ineffective.  The overlay appears to have been designed without input from or regard to the true needs of blind customers; it creates the appearance of accessibility, without providing any real benefit to the blind.

7.      The Container Store's disregard for the needs of its blind customers is also demonstrated by its failure to provide equal access for blind customers to the benefits it provides through its Loyalty Program. The Container Store's Loyalty Program provides various advantages to customers who enroll, including special discounts and rewards, and the ability to return any product for a full refund without a receipt.

8.      In order to enroll in the Loyalty Program and continue to receive its benefits, a customer must provide his or her private email address or phone number.  In order to obtain the benefits associated with the Loyalty Program, shoppers must register *each purchase* through the

Loyalty Program. Because blind customers cannot visually read the kiosks available to sighted purchasers, blind customers cannot independently enter their email address or telephone number to register their purchases, and they must disclose this information verbally – not just once to enroll in the program, but repeatedly, in connection with each store visit and purchase.

9.      The information necessary to enroll in and receive benefits from The Container Store's Loyalty Program is private and confidential, and blind customers should not be forced to have to disclose this information publicly in order to get the same discounts and benefits as sighted customers.  Many states, including Massachusetts, have enacted laws such as Mass. Gen. Laws ch. 93 Section 105(a), which specifically designate a customers' telephone number (among other information) as "personal identification information" that is private and deserving of protection.

10.      The Container Store is well aware of the significance of protecting their customers' personal information, having previously been sued in this very District for violating these privacy rights.  Earlier this year, The Container Store settled a class action lawsuit brought in this District, alleging that The Container Store violated Mass. Gen. Laws ch. 93 Section 105(a) by its "unlawful invasion of its customers' privacy and disregard for the laws of the Commonwealth of Massachusetts . . ." *Monteferrante v. The Container Store, Inc.*, No. 1:13-cv-11362-RGS, Complaint at Par. 1 (Dist. Mass. June 6, 2013).  In that case, The Container Store was alleged to require its customers to disclose personal ZIP code information in connection with a credit card transaction, although the collection of that information was not required in order to complete the transaction.

11.      Having just recently settled a case involving its alleged invasion of the privacy rights of all its customers, The Container Store should be particularly aware of the significance

of its obligation to protect and preserve the personal information of all its customers – including its blind customers.   It is also now common knowledge, especially given the rash of recent security breaches involving stolen email addresses, for example with respect to Home Depot, that disclosure of confidential email addresses may lead to significant additional security threats. Because email is widely deployed, well understood, and used to communicate with untrusted external organizations, it is frequently the target of attacks. Common threats to email include the use of software to change privileges, gain access to sensitive information, monitor users' activities and perform other malicious actions. In addition, unsolicited commercial email, such as spam, may be sent, or a similar technique called phishing may be employed, in which deceptive emails are used to trick individuals to respond and disclose sensitive information such as banking usernames or passwords.   Another common method of fraud involving email is known as spoofing, in which an attacker masquerades as another by falsifying the sender information. Because blind customers cannot see the people who are within earshot of their confidential information, they are vulnerable to potential security risks in being forced to repeatedly reveal their email or telephone numbers in a manner that is not secure.

12.    The Container Store has taken steps to protect the privacy of its sighted customers' personal information by allowing them to independently enter the information on a kiosk or other electronic device; it should do the same for its blind customers.

13.    The technology required to permit The Container Store's blind customers to independently register and log each transaction through its Loyalty Program is readily available and is currently in use throughout the country, at various self-service kiosks and at accessible ATMs, which make use of tactile controls and screen reading software that could easily be utilized here by the Defendant.

5

14.     The Container Store promotes itself as a proponent of "Conscious Capitalism" – the view that a business should focus on a purpose beyond profit. Yet in promoting its culture of "trust and care" it has failed to provide equal treatment to its blind customers.

15.     On behalf of themselves and all others similarly situated, Plaintiffs are asking this Court to require The Container Store to provide equal access to all blind customers nationwide, and to require them to pay damages for their failure to comply with the law. By its actions or inactions, The Container Store has violated federal law and the laws of numerous states, including California, Massachusetts, New York and Texas, that expressly prohibit discrimination against the blind and that provide for minimum statutory damages for each violation. This class action is intended to end The Container Store's discriminatory practices and provide compensation to the blind customers who have shopped at The Container Store and have been deprived of equal access to its goods and services.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, and pursuant to its pendent jurisdiction over claims brought under the laws of the States of California, Texas and New York, pursuant to 28 U.S.C. § 1367(a).  Additionally and alternatively, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(2) as the matter in controversy exceeds the sum of $5 million dollars, exclusive of interest and costs, and is a class action in which a member of a class of Plaintiffs is a citizen of a State different from Defendant.

17.     Defendant operates three (3) retail stores in Massachusetts.  Defendant therefore conducts substantial business in this judicial district, deriving substantial revenues therefrom.  In addition, some of the Plaintiffs' claims arose in this judicial district, and Defendants' actions

have caused injury to consumers who reside in this district, including Plaintiffs Cadigan and Pyyhkala.

18.     Venue in this judicial district is also proper under 28 U.S.C. § 1391 in that a substantial part of the events and omissions giving rise to the claims occurred in this judicial district.

## **PARTIES**

19.     The NFB is a non-profit corporation incorporated in the District of Columbia, with its principal place of business in Baltimore, Maryland.  It is the largest organization of blind and low-vision people in the United States. Founded in 1940, the Federation has grown to over fifty-thousand members.  The organization consists of affiliates and local chapters in every state, the District of Columbia, and Puerto Rico.  The purpose of the NFB is two-fold – to help blind persons achieve self-confidence and self-respect, and to act as a vehicle for collective self-expression by the blind.  By providing public education about blindness, information and referral services, scholarships, literature and publications about blindness, aids and appliances and other adaptive equipment for the blind, advocacy services and protection of civil rights, development and evaluation of technology, and support for blind persons and their families, members of the NFB strive to educate the public that the blind are normal individuals who can compete on terms of equality.  This effort and this purpose have been and continue to be adversely affected by Defendant's violations of the law as alleged herein.

20.     Mark Cadigan is and, at all times relevant hereto, was a resident of the state of Massachusetts.  He is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, the Massachusetts Public

Accommodations Act, Mass. Gen. Laws ch. 272, § 98 and the Equal Rights Act, Mass. Gen. Laws ch. 93, § 103(a) (collectively referred to as "MADA").  He is a member of the NFB.

21.     Mika Pyyhkala is and, at all times relevant hereto, was a resident of the state of Massachusetts.  He is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*., and the MADA.  He is a member of the NFB.

22.     Lisa Irving is and, at all times relevant hereto, was a resident of the state of California.  She is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*., California Civil Code § 51(e)(1), and Cal. Civ. Code § 54(b)(1).  She is a member of the NFB.

23.     Arthur Jacobs is and, at all times relevant hereto, was a resident of the state of New York.  He is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*., the New York Executive Laws, §292(21) *et seq*., and NYC Admin. Code§ 8-102(16).  He is a member of the NFB.

24.     Heather Albright is and, at all times relevant hereto, was a resident of the state of Texas.  She is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*., and Tex. Hum. Res. Code Ann. ("THRC") § 121.002(4). She is a member of the NFB.

25.     Jeanine Kay Lineback is and, at all times relevant hereto, was a resident of the state of Texas.  She is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*., and THRC § 121.002(4).  She is a member and President of the Austin, Texas chapter of the NFB.

26.     Defendant The Container Store is a corporation incorporated in Delaware and headquartered at 500 Freeport Parkway, Coppell, Texas.  The Container Store owns, leases, or operates a place of public accommodation pursuant to 42 U.S.C. § 12181(7) (E), Mass. Gen. Laws ch. 272, § 92(a), California Civil Code § 51; Cal. Civ. Code § 54.1, New York Civil Rights Law § 40, New York Executive Laws, §292(9), and NYC Admin. Code§ 8-102(9), and a public facility pursuant to Tex. Hum. Res. Code Ann. § 121.002(5).

## FACTUAL ALLEGATIONS

27.     Defendant currently operates approximately seventy (70) stores in the United States, including the District of Columbia, with at least seven (7) more stores scheduled to open within the next eight months.  Defendant's stores include three (3) in Massachusetts, eleven (11) in California, four (4) in New York, and twelve (12) in Texas.

28.     The Container Store promotes itself as the original and leading specialty retailer of storage and organization products in the United States and the only national retailer solely devoted to the category.  Defendant promises creative, multifunctional, customizable storage and organization solutions that help its customers save time, save space and improve the quality of their lives.

29.     In the last year alone, The Container Store's net revenue from its retail sales reached nearly $750 million. Defendant can certainly afford to provide the same tactually

discernible keypads and other methods of non-visual access to all of its blind or visually impaired customers in all of its retail stores that many smaller businesses have provided for at least the previous five (5) years.  They could easily have provided accessible POS Devices initially, avoiding any additional expense.

30.     On information and belief, on an annual basis, Defendant processes hundreds of millions of dollars in sales transactions annually, including millions of dollars in sales to its blind or visually impaired customers.

31.     It is estimated that there are 10 million Americans who are visually impaired, including approximately 1.3 million that are legally blind.  Although precise numbers are not available at this time, it is safe to estimate that blind customers make tens of thousands of sales transactions on an annual basis at Defendant's many locations.

32.     This case arises out of Defendant's failure to comply with the legal regulations requiring it to provide equal access to its products and services to blind or visually impaired customers.

33.     A photo of one of Defendant's inaccessible POS Devices is provided below:



34.     The Container Store has long known this style of POS Device cannot be independently used by its blind or visually impaired customers.

35.     On information and belief, The Container Store has only recently taken steps to replace its POS Devices in California– a state with friendly disability laws and severe compensatory damages for noncompliance – and a state that has for many years explicitly required all merchants to provide tactually discernible keypads to enable blind customers to independently make purchases on their debit cards.  *See* California Financial Code § 13082.

36.     In some other states, such as its home state of Texas, some of its stores have recently begun to offer blind customers a plastic overlay that is called an "Accessibility Overlay."  This overlay rests on top of the touch screen POS Device and appears to have been intended to permit a blind or visually-impaired person to enter his or her PIN to complete a transaction.  However, the overlay cannot be independently utilized.  In order to enter a PIN, the

overlay either cannot be used at all, or it requires such extensive direction and assistance from a cashier or other individual as to render it virtually useless.  In addition, the overlay provides no privacy shield, so even if it could be independently used, a blind customer's PIN would be visible to other customers or the cashier.

37.     The device fails to provide the accessibility it purports to provide – an outcome that could have been avoided had The Container Store simply included the NFB and its members in the development or procurement process.

38.     A photo of a POS Device utilizing the Accessibility Overlay is provided below.



39.     Unlike the cheap plastic overlay deployed by The Container Store, POS Devices with tactually discernible keypad surfaces – which are independently usable by a blind or

visually impaired individual – are readily available, and are used by a substantial percentage of retailers.  An example of such a POS Device is provided below:



40.     A customer's use of a debit card instead of a credit card affords the added protection of requiring a PIN to complete the transaction.  This extra layer of protection is important in the event a card is lost or stolen.  For a blind or visually impaired customer who is required to disclose that PIN in order to proceed with a transaction, that security is compromised.

41.     As the DOJ explained in the *New* case, considerations such as the security or confidentiality of banking information are important in determining whether an auxiliary aid or

service is appropriate, and requiring disclosure of a confidential PIN is not an appropriate auxiliary aid or service. *New*, at pp. 10-11.

42.     In addition to being unable to independently utilize the POS Device – whether with the Accessibility Overlay, or without – blind or visually impaired customers also cannot independently use the kiosks provided at the register or at various store locations, for participation in The Container Store's Loyalty Program.

43.     Many of the NFB's members, including Plaintiffs, have patronized Defendant's retail stores, intend to continue to do so in the future, and would like to continue to patronize Defendant's retail stores when the discriminatory barriers are removed or cured.

44.     Defendant's touch screen POS Devices and kiosks have the capacity to provide more information than that which is necessary for completing a transaction.  Due to the fact that the information being presented through these touch screens is entirely inaccessible in a non-visual manner, blind customers stand the significant risk of not having full and equal access to goods and services being offered by Defendant.

45.     Like many other retail establishments, The Container Store has developed its Loyalty Program to provide additional benefits to its customers. According to The Container Store's website, members are "rewarded with valuable discounts and surprises, and you may receive valuable communications, tips, exclusive invitations and product previews ("POP! Perks") that will help get you started on your next organizational project."  According to The Container Store's website, in order to enroll in the POP! Program and become a member, a customer must visit a The Container Store retail location and provide at a minimum, their email address.  A customer may also provide their phone number, name, street address, and/or birthday information, but is not required to do so.  For a customer to credit a transaction to their POP!

Program membership – and receive whatever benefits the program affords – they must sign-in to their POP! Program account by providing their email address or phone number at the point of checkout.

46.     Multiple states, including Massachusetts and California, have recognized the obvious privacy issues that arise when a customer's personal identifying information is provided, and have limited a customer's need to produce such information during a credit card transaction. Due to the absence of any otherwise capable and accessible alternative while shopping at The Container Store, blind or visually impaired customers must provide their email or other personally identifying information orally, without the same privacy protections afforded sighted customers.

47.     Should a blind or visually impaired customer decide to partake in the additional goods and services being offered by the POP! Program, they must forego their right to privacy and disclose personal identifying information in a public manner that is not required of sighted customers.

48.     The individual plaintiffs in this case are legally blind.  As do sighted customers, they also turn to The Container Store for specialty storage and organization products.

49.     The elimination of discrimination such as that of The Container Store is at the core of the NFB's organizational purpose.  To the extent this lawsuit seeks injunctive and/or declaratory relief, the individual participation of each injured NFB member is not indispensable to the proper resolution of this case.

50.     In addition, Defendant's actions have caused and continue to cause distinct and palpable injury to the NFB itself, along with its members.  Defendant's discriminatory practice

has caused the NFB to expend its resources to investigate and remedy the violations of law alleged herein.

51.     Pursuant to Mass. Gen. Laws c. 93A, §9, on August 3, 2015, Plaintiffs sent a proper notice/demand letter to Mr. Peter Lodwick, an Officer (Vice President and General Counsel) of The Container Store via certified and first-class mail (hereinafter "93A Demand Letter").

52.     The 93A Demand Letter clearly identifies the claimants, reasonably describes the unfair or deceptive acts or practices relied upon, reasonably describes the injuries suffered by the Plaintiffs (which they continue to suffer so long as The Container Store refuses to make its POS Devices and loyalty program equally accessible to its blind customers), and provided clear explicit notice to The Container Store that a claim under Mass. Gen. Laws c. 93A is being asserted.

## THE ADA AND STATE LAWS AT ISSUE

53.     On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.  Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements.

54.     Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181-89.

55.     The Department of Justice is the administrative agency charged by Congress with implementing the requirements of the ADA.  In the *New* case, the DOJ explained that a failure to

provide auxiliary aids or services necessary to complete private and independent debit card transactions violates the statutory and regulatory provisions of Title III of the ADA. *New*, at pp. 13-14.

56.     Notwithstanding this clear guidance from the DOJ, the Container Store has failed to provide POS Devices in its stores that are accessible to the blind or visually impaired.

57.     Similarly, the failure to provide auxiliary aids or services necessary to permit blind customers to register for and receive the benefits of The Container Store's Loyalty Program, without having to publicly disclose private information such as an email address or telephone number, violates the statutory and regulatory provisions of Title III of the ADA.

58.     The Massachusetts legislature enacted MADA as comprehensive civil rights laws prohibiting discrimination in the state of Massachusetts on the basis of disability.  MADA likewise prohibits discrimination in places of public accommodation and entitles individuals who are visually or hearing impaired or individuals with a disability full and equal enjoyment of the accommodations, advantages, facilities and privileges of any place of public accommodation. *See* Mass. Gen. Laws ch. 272, §§ 92A and 98; and Mass. Gen. Laws ch. 93, § 103.

59.     Plaintiffs have filed a complaint of discrimination with the Massachusetts Commission Against Discrimination, setting forth The Container Store's discriminatory actions, as described herein.  Plaintiffs requested that MCAD permit Plaintiffs to pursue their claims under Massachusetts law in this action. By letter dated July 13, 2015, MCAD granted Plaintiffs' request and dismissed Plaintiffs' complaint with the Commission without prejudice as to its merits.

60.     The California legislature has enacted comprehensive civil rights laws prohibiting discrimination in the state of California on the basis of disability.   The laws prohibit

17

discrimination in places of public accommodation and entitle individuals who are visually or hearing impaired, or individuals with a disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.  *See* California Financial Code § 13082, California Civil Code §§ 51, *et seq*., and Cal. Civ. Code §§ 54-54.3.

61.     The New York legislature has also enacted comprehensive civil rights laws prohibiting discrimination in the state of New York on the basis of disability.  New York laws prohibit the violation of a person's civil rights and the direct or indirect refusal, withholding from, or denial of any of the accommodations, advantages, facilities or privileges of a place of public accommodation.  *See* N.Y. Civil Rights Law § 40-c (2), and NY Exec. Laws. § 296(2) (a).

62.     Texas law likewise prohibits discrimination in places of public accommodation and entitles individuals who are visually or hearing impaired, or individuals with a disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of public facilities.  *See* Tex. Hum. Res. Code Ann. § 121.003.

63.     The statutory policy in Texas is designed "to encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to achieve maximum personal independence, to become gainfully employed, and to otherwise fully enjoy and use all public facilities available within the state."  *Id.* at § 121.001.  In order to accomplish its statutory objectives, not only does Texas law provide for a $300 minimum per violation, but the law itself provides that "there is a conclusive presumption of damages in the amount of at least $300 to the person with a disability."  *Id.* at § 121.004(b).

64.     Minimum statutory damages are also available under the laws of Massachusetts, California and New York.

**FACTS PERTAINING TO NAMED PLAINTIFFS**

65.     The NFB is a membership organization.  Its members include many people like Mark Cadigan, Mika Pyyhkala, Lisa Irving, Arthur Jacobs, Jeanine Kay Lineback, and Heather Albright, who are legally blind.   Many of these people are regular patrons of retail establishments such as The Container Store.

### a.     Mark Cadigan

66.     In or about May of 2015, Mark Cadigan visited one of Defendant's stores located in Danvers, Massachusetts.

67.     Mark Cadigan was unable to make a debit card purchase independently because, at the time of the visit, The Container Store's POS Devices had only touch screen devices that could not be read or viewed by Mr. Cadigan.  He was therefore unable to independently enter his PIN to complete a transaction.  Mr. Cadigan has been denied the full enjoyment of the facilities, goods and services of The Container Store, as a result of accessibility barriers at Defendant's stores.

### b.     Mika Pyyhkala

68.     In or about May of 2015, Mika Pyyhkala visited one of Defendant's stores located in Chestnut Hill, Massachusetts.

69.     Mika Pyyhkala was unable to make a debit card purchase independently because, at the time of the visit, The Container Store's POS Devices had only touch screen devices that could not be read or viewed by Mr. Pyyhkala.  He was therefore unable to independently enter his PIN to complete a transaction.  Mr. Pyykhala registered for The Container Store's Loyalty Program in or about the winter of 2014.  Because the devices that The Container Store employs to enable customers to privately enter their personal identifying information could not be used by

Mr. Pyykhala, he was forced to verbally disclose his personal information to the store clerk in order to participate in and benefit from the Loyalty Program during his May 2015 visit. Mr. Pyyhkala has been denied the full enjoyment of the facilities, goods and services of The Container Store, as a result of accessibility barriers at Defendant's stores.

### c.    Lisa Irving

70.    In or about May of 2015, Lisa Irving visited one of Defendant's stores located in San Diego, California.

71.    Lisa Irving was unable to independently participate in the POP! Program offered by The Container Store because the devices that The Container Store employs to enable customers to privately enter their personal identifying information could not be used by Ms. Irving.  Ms. Irving was forced to verbally disclose her personal information to the store clerk in order to enroll in the program. Ms. Irving has been denied the full enjoyment of the facilities, goods and services of The Container Store, as a result of accessibility barriers at Defendant's stores.

### d.    Arthur Jacobs

72.    In or about May of 2015, Arthur Jacobs visited one of Defendant's stores located in New York, New York.

73.    Arthur Jacobs was unable to make a debit card purchase independently because, at the time of the visit, The Container Store's POS Devices, which utilized an Accessibility Overlay, could not be read or viewed by Mr. Jacobs.  The overlay did not provide physical reference points sufficient to permit him to utilize the POS Device independently.  He was therefore unable to independently enter his PIN to complete a transaction.  Mr. Jacobs was also unable to independently register for and participate in the POP! Program because the device that

The Container Store employs to enable customers to privately enter their personal identifying information could not be used by Mr. Jacobs.  Mr. Jacobs was forced to verbally disclose his personal information to the store clerk in order to enroll in the program. Mr. Jacobs has been denied the full enjoyment of the facilities, goods and services of The Container Store, as a result of accessibility barriers at Defendant's stores.

### e.   Jeanine Kay Lineback

74.   In or about February of 2015, Jeanine Kay Lineback visited one of Defendant's stores located in Austin, Texas.

75.   Jeanine Kay Lineback was unable to make a debit card purchase independently. At the time of her visit, The Container Store's POS Devices utilized the Accessibility Overlay which contained tactile portions that could not be independently discerned by Ms. Lineback.  She required verbal instruction and guidance to complete her transaction.  There was no privacy shield to prevent the store clerk or other customers from viewing her PIN as it was entered.   On a separate occasion in or about May of 2015, Ms. Lineback was also unable to independently register at the store for the POP program because the device that The Container Store employs to enable customers to privately enter their personal identifying information could not be used by Ms. Lineback.  Ms. Lineback has been denied the full enjoyment of the facilities, goods and services of The Container Store, as a result of accessibility barriers at Defendant's stores.

### f.   Heather Albright

76.   In or about February of 2015, Heather Albright visited one of Defendant's stores located in Austin, Texas.

77.   Heather Albright was unable to make a debit card purchase independently because, at the time of the visit, The Container Store's POS Devices had only touch screen

devices that could not be read or viewed by Ms. Albright.  She was therefore unable to independently enter her PIN to complete a transaction.  Ms. Albright has been denied the full enjoyment of the facilities, goods and services of The Container Store, as a result of accessibility barriers at Defendant's stores.

78.   Without injunctive relief, Plaintiffs, and other individuals similarly situated, will continue to be unable to independently use Defendant's POS Devices and/or equally participate in The Container Store's POP! Program in violation of Plaintiffs' rights under the ADA and state law.

79.   Whether on the original POS Device, or The Container Store's attempted retrofitted solution ("Accessibility Overlay"), in order to purchase merchandise with a debit card or participate in a promotional program, a blind or visually impaired customer is required to disclose his/her private PIN or other personal identifying information directly to the cashier or another person, or under their guidance and watch.  This is an unnecessary and intrusive violation of privacy that could easily be remedied. To the extent that Defendant offers other goods and services through its inaccessible touch screens, it further discriminates against its blind or visually impaired customers.

## CLASS ALLEGATIONS

80.   Plaintiffs seek certification of the following classes (hereinafter referred to as the "Nationwide Class" or "Nationwide Classes") pursuant to Fed. R. Civ. P. 23(a) and 23(b) (2): "all individuals in the United States who were unable to independently register and/or participate in the POP! Program at any The Container Store location because of a visual disability, at any time during the applicable limitation period through the present," and "all individuals in the United States who were unable to independently complete a debit or credit card transaction

requiring entry of a PIN in a non-visual manner using a touch screen POS Device at any The Container Store location because of a visual disability, at any time during the applicable limitation period through the present."

81.     Plaintiffs also seek certification of the following two Massachusetts subclasses (referred to herein as the "Massachusetts Subclass" or "Massachusetts Subclasses") pursuant to Fed. R. Civ. P. 23(a), 23(b) (2), and, alternatively, 23(b) (3):  "all individuals who were unable to independently register for and/or participate in the POP! Program at any The Container Store location in Massachusetts because of a visual disability, at any time during the applicable limitation period through the present," and "all individuals who were unable to independently complete a debit or credit card transaction requiring entry of a PIN in a non-visual manner using a touchscreen POS Device at any The Container Store location in Massachusetts because of a visual disability, at any time during the applicable limitation period through the present."

82.     Plaintiffs also seek certification of the following two California subclasses (referred to herein as the "California Subclass" or "California Subclasses") pursuant to Fed. R. Civ. P. 23(a), 23(b) (2), and, alternatively, 23(b) (3):  "all individuals who were unable to independently register for and/or participate in the POP! Program at any The Container Store location in California because of a visual disability, at any time during the applicable limitation period through the present," and "all individuals who were unable to independently complete a debit or credit card transaction requiring entry of a PIN in a non-visual manner using a touch screen POS Device at any The Container Store location in California because of a visual disability, at any time during the applicable limitation period through the present."

83.     Plaintiffs also seek certification of the following two New York subclasses (referred to herein as the "New York Subclass" or "New York Subclasses") pursuant to Fed. R.

Civ. P. 23(a), 23(b) (2), and, alternatively, 23(b) (3): "all individuals who were unable to independently register for and/or participate in the POP! Program at any The Container Store location in the State of New York because of a visual disability, at any time during the applicable limitation period through the present," and "all individuals who were unable to independently complete a debit or credit card transaction requiring entry of a PIN in a non-visual manner using a touch screen POS Device at any The Container Store location in the State of New York because of a visual disability, at any time during the applicable limitation period through the present."

84.     Plaintiffs also seek certification of the following two Texas subclasses (referred to herein as the "Texas Subclass" or "Texas Subclasses") pursuant to Fed. R. Civ. P. 23(a), 23(b) (2), and, alternatively, 23(b) (3): "all individuals who were unable to independently register for and/or participate in the POP! Program at any The Container Store location in Texas because of a visual disability, at any time during the applicable limitation period through the present," and "all individuals who were unable to independently complete a debit or credit card transaction requiring entry of a PIN in a non-visual manner using a touch screen POS Device at any Texas The Container Store location because of a visual disability, at any time during the applicable limitation period through the present."

85.     The members of the Nationwide Classes and each Subclass are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

86.     There are common questions of law and fact involved affecting the parties to be represented in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, facilities and/or services due to the lack

of equal access to Defendant's goods and services as required by law for persons with disabilities. Common questions of law and fact include: (1) Whether The Container Store's retail establishments deny the full and equal enjoyment of its goods, services, facilities, privileges, advantages or accommodations to the blind in violation of the ADA and California, Massachusetts, New York and Texas laws; (2) If so, what measures are legally required to bring The Container Store into compliance with the ADA and state law; and (3) Whether Plaintiffs and members of the Nationwide Class and each Subclass sustained damages and, if so, the proper measure of damages or other relief.

87.     The claims of the named Plaintiffs are typical of those of the Nationwide Classes and respective Subclasses.

88.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Nationwide Class and each Subclass. Plaintiffs have retained and are represented by counsel competent and experienced in complex class action litigation.

89.     Class certification of the claims of the Nationwide Classes and each Subclass is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because The Container Store has acted or refused to act on grounds generally applicable to the Nationwide Classes, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Nationwide Classes and each Subclass as a whole.

90.     Class certification of each Subclass is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to members of each Class and Subclass predominate over questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. In

addition, because Plaintiffs seek only statutory damages for each instance of discrimination, there are no individual issues concerning each member's damages.

91.     Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden which would otherwise be placed upon the judicial system by the filing of numerous individual lawsuits and there are no obstacles to effective and efficient management of this lawsuit as a class action.

## FIRST CAUSE OF ACTION

(Violation of 42 U.S.C. §§ 12181, *et seq.* – Title III of the Americans with Disabilities Act)
(On Behalf of All Plaintiffs and the Nationwide Classes)

92.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-91 of this Amended Complaint.

93.     Section 302(a) of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

94.     Title III of the ADA applies to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Defendant owns, leases (or leases to) and/or operates places of public accommodation.

95.     Defendant is a chain of retail stores and, therefore, a place of public accommodation within the definition of Title III of the ADA. 42 U.S.C. §§12181(7) (E).

96.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to

participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

97.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

98.     Defendant has discriminated against Plaintiffs and the Nationwide Classes in that it has failed to make its POS Devices and Loyalty Program fully accessible to individuals who are blind or visually impaired in violation of 42 U.S.C. §§ 12101, 12102(2) and 28 C.F.R. §§ 36.101 *et seq.*  Providing the auxiliary aids and services mandated by the ADA would neither fundamentally alter the nature of Defendant's businesses nor result in an undue burden to Defendant.

99.     Defendant is financially capable of the costs required to provide auxiliary aids for its POS Devices.  Notwithstanding this fact, The Container Store has failed to develop and provide appropriate auxiliary aids for its blind customers.

100.    Defendant's conduct is ongoing, and, given that Defendant has not complied with the ADA's requirements that public accommodations make their goods and services fully accessible to blind or visually impaired individuals, Plaintiffs invoke their statutory rights to injunctive relief, as well as costs and attorneys' fees.

101.    Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after Defendant certifies it is fully compliant with the mandatory requirements of the ADA that are discussed above, The Container Store's non-compliance with the ADA's requirements is likely to recur.

## SECOND CAUSE OF ACTION

Violation of the Massachusetts Public Accommodations Act
(On Behalf of Plaintiffs Mika Pyyhkala, Mark Cadigan, NFB, and the Massachusetts Subclasses)

102.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-101 of this Amended Complaint.

103.    Plaintiffs Mika Pyyhkala and Mark Cadigan are legally blind and as such are recognized as members of a protected class under Mass. Gen. Law ch. 272, § 98.

104.    Defendant operates and controls, and operates within, a place of public accommodation as defined by Mass. Gen. Laws ch. 272, § 92A.

105.    Defendant, in violation of Mass. Gen. Laws ch. 272, § 98, has failed to make its POS Devices and Loyalty Program fully accessible and independently usable by individuals who are blind or visually impaired.

106.    As a result of Defendant's noncompliance with the MA Anti-Discrimination Act ("MADA"), Defendant "shall be liable to any person aggrieved thereby for [] damages …provided…that such civil forfeiture shall be of an amount not less than three hundred dollars." Mass. Gen. Laws ch. 272, § 98.

107.    On July 13, 2015, Plaintiffs' request for removal to this court of their Massachusetts Commission Against Discrimination ("MCAD") filing (MCAD Docket Number: 15BPA01647) was granted.

**THIRD CAUSE OF ACTION**

Violation of the Massachusetts Equal Rights Act
(On Behalf of Plaintiffs Mika Pyyhkala, Mark Cadigan, NFB, and the Massachusetts Subclasses)

108.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-107 of this Amended Complaint.

109.    Plaintiffs Mika Pyyhkala and Mark Cadigan are legally blind and recognized as a protected class under Mass. Const. amend. CXIV and under the Massachusetts Equal Rights Act, Mass. Gen. Law ch. 93, § 103(a).

110.    The retail stores offered by Defendant in Massachusetts constitute a program or activity under Mass. Const. amend. CXIV.

111.    Defendant has excluded blind or visually impaired people from the participation in and benefits of the services offered at Defendant's stores in Massachusetts and has subjected Plaintiffs to discrimination under Mass. Const. amend. CXIV and the Massachusetts Equal Rights Act, Mass. Gen. Law ch. 93, § 103.

**FOURTH CAUSE OF ACTION**

Violation of Mass. Gen. Laws c. 93A, §9
(On Behalf of Plaintiffs Mika Pyyhkala, Mark Cadigan, NFB, and the Massachusetts Subclass)

112.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-111 of this Amended Complaint.

113.    At all relevant times hereto, The Container Store was engaged in trade or commerce.

114.    The Container Store has violated the Massachusetts Equal Rights Act (Mass. Gen. Laws c. 93, §103) as pled by Plaintiffs in their THIRD CAUSE OF ACTION, above.

115.     Violation of Mass. Gen. Laws c. 93, §103 is a practice or act considered unfair under Mass. Gen. Laws c. 93A, §2 by virtue of such violation being within the "penumbra of common law, statutory, or other established concept of unfairness" and that such violation is both "immoral" and "oppressive, or unscrupulous."

116.     The Container Store has violated and continues to violate the ADA and state laws set forth herein, and has violated other established concepts of fairness, by using inaccessible POS Devices and log-in methods for its loyalty program, and has been further unfair and deceptive in its refusal to negotiate in good faith with the Plaintiffs. Despite Plaintiffs' attempt to resolve this dispute  prior to instituting the instant lawsuit  through organized outreach in an attempt to provide fair discourse and substantive suggestions proven to remove the very access barriers at issue and compensate affected class members, the Defendant has  failed to negotiate in good faith and has refused to grant the relief requested or to substantively respond to the 93A Demand Letter, with knowledge or reason to know that the act or practice complained of violated section 2 of Mass. Gen. Laws c. 93A   – this, even in the face of The Container Store having received the requisite 93A Demand Letter and having been provided an extension of time in which to respond.

117.     Indeed, as a direct and proximate result of the continual discrimination against legally blind persons by The Container Store through its insistence on using inaccessible POS Devices and log-in methods for its Loyalty Program, "POP!", in its Massachusetts stores, Plaintiffs were harmed and damaged by the Defendant's invasion of the Plaintiffs' legally protected interests.

## FIFTH CAUSE OF ACTION

(Violation of California Civil Code §§ 51, *et seq*. – the Unruh Civil Rights Act)
(On behalf of Plaintiff Lisa Irving, NFB, and the California Subclasses)

118.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-109 of this Amended Complaint.

119.     The California Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.,* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.

120.     Defendant is systematically violating the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.*   Defendant has discriminated against Plaintiff Irving, the NFB and its members, and the California Subclass in that it has failed to provide equal access to the goods and services available at its retail stores, specifically by failing to provide POS Devices that are fully accessible to, and independently useable by, individuals who are blind, and by failing to provide in-store electronic devices that would permit blind customers to independently register for and participate in The Container Store's Loyalty Program without having to publicly disclose personal information.   In these respects, The Container Store is in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.* and therefore Plaintiff Irving, the NFB and its members, and the California Subclass are entitled to injunctive relief to remedy the discrimination.

121.     Defendant is financially capable of paying the costs required to provide auxiliary aids for its blind or visually impaired customers, and could have purchased accessible POS Devices initially without significant additional cost.   However The Container Store has failed to uniformly provide its customers with an accessible device through which its blind or visually impaired customers can independently participate in the POP! Program and/or make debit card purchases.

122.     Providing the auxiliary aids and services mandated by the ADA would neither fundamentally alter the nature of Defendant's businesses nor result in an undue burden to Defendant.

123.     Defendant's conduct is ongoing, and, given that Defendant has not complied with the California Unruh Civil Rights Act requirements, the NFB and its members, and the California Subclasses invoke their statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

124.     Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after Defendant certifies that it is in full compliance with the mandatory requirements of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.,* that are discussed above, Defendant's non-compliance with the California Unruh Civil Rights Act is likely to recur.

125.     Defendant is additionally violating California Civil Code § 51, in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, as set forth above. California Civil Code § 51(f) provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

126.     The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.*, and therefore Plaintiff Irving, the NFB and its members, and the California Subclass are entitled to injunctive relief remedying the discrimination. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff Irving, the NFB and its members, and the California Subclass will continue to suffer irreparable harm.

127.    Plaintiff Irving, NFB and its members, and the California Subclass are also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense.

## SIXTH CAUSE OF ACTION

(Violation of Cal. Civ. Code §§ 54-54.3 – the Disabled Persons Act)
(On Behalf of Plaintiff Lisa Irving, NFB, and the California Subclasses)

128.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-127 of this Amended Complaint.

129.    California Civil Code § 54(a) states that "Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places."

130.    California Civil Code § 54.1 guarantees full and equal access for people with disabilities to all accommodations, advantages, facilities, and privileges of "all places of public accommodation" and "other places to which the general public is invited."

131.    Defendant's POS Devices throughout California constitute "places of public accommodation" or "other places where the public is invited" within the meaning of California Civil Code § 54.1.

132.    POS Devices constitute accommodations, advantages, facilities, and privileges provided by Defendant to members of the public in California and are, therefore, subject to the access requirements of California Civil Code § 54.1 applicable to "all places of public accommodation" and "other places to which the general public is invited."

133.    Defendant is violating the rights of blind or visually impaired persons to full and equal access to public places by denying full and equal access to The Container Store's Loyalty Program and to its POS Devices in violation of California Civil Code §§ 54-54.3.

134.    Defendant is also violating California Civil Code §§ 54-54.3, in that its actions are a violation of the ADA.  Any violation of the ADA is also a violation of California Civil Code § 54.1.

135.    As a result of Defendant's wrongful conduct, Plaintiffs Irving, the NFB and its members, and the California Subclass are entitled to statutory minimum damages under California Civil Code § 54.3 for each offense.  Plaintiffs do not seek injunctive relief under California Civil Code § 55.

## SEVENTH CAUSE OF ACTION

(Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*. – the Unfair Competition Law)
(On Behalf of Plaintiff Lisa Irving, NFB, and the California Subclasses)

136.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-135 of this Amended Complaint.

137.    The Unfair Competition Law of the California Business & Practices Code (UCL) provides, in pertinent part that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice."  CA Bus. & Prof. § 17200.

138.    The unlawful prong of the UCL borrows violations of other laws and treats them as unlawful practices that are independently actionable under the UCL.

139.    Virtually any law or regulation – federal or state, statutory or common law – can serve as a predicate for an UCL "unlawful" violation.  If a business practice violates any law, it also violates Bus. & Prof. Code §§ 17200, *et seq*. and may be redressed.

140.    Defendant has violated the unlawful prong of the UCL by violating each of the following: 42 U.S.C. §§ 12181, *et seq*. – Title III of the Americans with Disabilities Act; the California Civil Code §§ 51, *et seq*. – the Unruh Civil Rights Act, and Cal. Civ. Code §§ 54-54.3.

34

141.     Pursuant to Cal. Bus. & Prof. Code section 17203, Plaintiff Irving, the NFB and its members, and each California Subclass are entitled to equitable relief, including a permanent injunction enjoining Defendant from its unlawful business activities as alleged herein, and appropriate declaratory relief as described herein.

### EIGHTH CAUSE OF ACTION

(Violation of New York State Human Rights Laws §§ 290 *et seq.*)
(On behalf of Plaintiffs Arthur Jacobs, NFB, and the New York Subclasses)

142.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-141 of this Amended Complaint.

143.     New York State Human Rights Law were enacted because:

"the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity [] because of discrimination … not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants."

NY State Human Rights Law § 290(3).

144.     Pursuant to New York State Human Rights Law:

It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof…

NY Exec. Laws § 296(2) (a).

145.     A place of public accommodation under New York Human Rights Law includes "wholesale and retail stores and establishments dealing with goods or services of any kind." NY Exec. Laws. § 292(9).

146.     New York Executive Law defines the term "disability" as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function…" N.Y. Executive Law § 292(21).

147.     Plaintiff Arthur Jacobs is a person with a disability in that he is legally blind.

148.     By designing and employing POS Devices and a Loyalty Program that are not independently accessible to blind customers, The Container Store has deprived Plaintiffs Jacobs, the NFB and its members, and the New York Subclasses the full enjoyment of the accommodations, advantages, facilities or privileges of The Container Store's retail establishments in New York in violation of New York State Human Rights Law section 296.

149.     Defendant has violated the New York State Human Rights Laws.  "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages … and such other remedies as may be appropriate." NY Exec. Laws § 297(9).

150.     The Defendant has further violated the New York State Human Rights Law by violating the rights provided under the ADA.

## NINTH CAUSE OF ACTION

(Violation of New York Civil Rights Law §§ 40 *et seq.*)
(On behalf of Plaintiffs Arthur Jacobs, NFB, and the New York Subclasses)

151.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-150 of this Amended Complaint.

152.     Pursuant to New York Civil Rights Law section 40, "[a]ll persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations … [n]o person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place shall directly or

36

indirectly … deny to any person any of the accommodations, advantages, facilities or privileges thereof…"  N.Y. Civil Rights Law § 40.

153.    Under New York Civil Rights Law section 40, a "place of public accommodation within the meaning of this article, shall be deemed to include … retail stores and establishments." N.Y. Civil Rights Law § 40.

154.    Defendant purports to be the "original and leading specialty retailer of storage and organization products in the United States and the only national retailer solely devoted to the category."  As such it is a retail store and therefore is a place of public accommodation for purposes of New York Civil Rights Law.

155.    New York Civil Rights Law provide in relevant part that "[n]o person shall, because of … disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights … in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state."  N.Y. Civil Rights Law § 40-c (2). Legal blindness is a disability under this definition.

156.    New York Executive Law defines the term "disability" as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function…"  N.Y. Executive Law § 292(21). Legal blindness is a disability under this definition.

157.    Plaintiff Arthur Jacobs is a person with a disability in that he is legally blind.

158.    By designing and employing POS Devices and a Loyalty Program that are not independently accessible to blind customers without requiring the disclosure of personal and confidential information, The Container Store has deprived Plaintiffs Jacobs, the NFB and its

members, and the New York Subclass the full enjoyment of the accommodations, advantages, facilities or privileges of The Container Store's retail establishments in New York in violation of New York Civil Rights Law section 40.

159.     Defendant has violated the New York Human Rights Law.  "Any person who shall violate any of the provisions of the foregoing section … shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved…"  N.Y. Civil Rights Law § 40-d.

160.     Notice of the action has been served upon the Attorney-General as required by New York Civil Rights Law § 40-d.

## TENTH CAUSE OF ACTION

(Violation of New York City Human Rights Law - NYC Admin. Code§ 8-107)
(On behalf of Plaintiffs Arthur Jacobs, NFB, and the New York Subclasses)

161.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-160 of this Amended Complaint.

162.     The New York City Human Rights Law provides:

(a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived ... disability ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of ... disability ...

NYC Admin. Code§ 8-107(4) (a).

163.     The term "person" includes "partnerships, associations, group associations, organizations … corporations…"  NYC Admin. Code§ 8-102(1).

164.    The "term 'place or provider of public accommodation' shall include providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind…" NYC Admin. Code§ 8-102(9).

165.    The term "disability" means "any physical, medical, mental or psychological impairment."   NYC Admin. Code§ 8-102(16) (a).

166.    Plaintiff Arthur Jacobs is a person with a disability in that he is legally blind.

167.    Defendant is in violation of the New York City Human Rights Law by denying Plaintiffs Jacobs, the NFB and its members, and the New York Subclass full and safe access to all of the benefits, accommodations and services of its New York stores.

168.    Plaintiffs invoke their statutory rights to injunctive relief, as well as costs and attorneys' fees. *See* NYC Admin. Code§ § 8-502(a), (f)

169.    Pursuant to New York City Human Rights Law § 8-502(c), notice of this action has been or will be filed with the Office of the Corporation Counsel and the City Commission on Human Rights.

## <u>ELEVENTH CAUSE OF ACTION</u>

(Violation of the Texas Human Resources Code – Tex. Hum. Res. Code Ann. § 121.001, *et seq*.)
(On Behalf of Plaintiffs Jeanine Kay Lineback, Heather Albright, NFB, and the Texas Subclasses)

170.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-169 of this Amended Complaint.

171.    Texas passed the Texas Human Resources Code in an effort to "encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to achieve maximum personal independence…and to otherwise fully enjoy and use all public facilities available within the state." Tex. Hum. Res. Code Ann. § 121.001.

39

172.    The THRC states "[p]ersons with disabilities have the same right as the able-bodied to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code Ann. § 121.003(a).

173.    The THRC defines a public facility as, *inter alia*, "a building to which the general public is invited." Tex. Hum. Res. Code Ann. § 121.002(5).

174.    Defendant owns or operates a public facility as defined in § 121.002(5).

175.    Failure to "provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility" is a prohibited form of discrimination. Tex. Hum. Res. Code Ann. § 121.003(d) (3).

176.    Plaintiffs Jeanine Lineback and Heather Albright are individuals with disabilities in that they are legally blind.

177.    By failing to make their POS Devices and Loyalty Program fully accessible to individuals who are blind or visually impaired, without requiring the disclosure of personal or confidential information in order to make a purchase or participate in the Loyalty Program, Defendant has discriminated against Plaintiffs Lineback and Albright, the NFB and it members, and each Texas Subclass by denying them the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the Defendant's stores in Texas in violation of the THRC.

178.    As a result of Defendant's noncompliance with the THRC, Plaintiffs Lineback and Albright, the NFB and it members, and the Texas Subclass "may maintain a cause of action for damages in a court of competent jurisdiction, and there is a conclusive presumption of damages in the amount of at least $300 to the person with a disability." Tex. Hum. Res. Code Ann. § 121.004(b).

## TWELFTH CAUSE OF ACTION

(Declaratory Relief)
(On behalf of Plaintiffs, the Nationwide Class, and all Subclasses)

179.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-178 of this Amended Complaint.

180.    An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe that Defendant denies that its stores fail to comply with applicable laws including but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, Mass. Gen. Laws ch. 272, §§ 92A and 98, Mass. Gen. Law ch. 93, § 103, California Civil Code § 13082,  California Civil Code §§ 51, *et seq.* – the Unruh Civil Rights Act, Cal. Civ. Code §§ 54-54.3 – the Disabled Persons Act, Cal. Bus. & Prof. Code §§ 17200, *et seq.* – the Unfair Competition Law, New York State Human Rights Law §§ 290 *et seq.*, New York Civil Rights Law §§ 40 *et seq.*, New York City Human Rights Law - NYC Admin. Code§ 8-107, and Tex. Hum. Res. Code Ann. § 121.001, *et seq.*

181.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, on behalf of the NFB and its members, Mark Cadigan, Mika Pyyhkala, Lisa Irving, Arthur Jacobs, Jeanine Kay Lineback, and Heather Albright, and the members of each Nationwide Class and respective Subclasses, pray for:

> a.    An Order certifying each Nationwide Class and Subclass proposed by Plaintiffs, and naming each Plaintiff as a representative of each Nationwide Class and appropriate Subclass, and appointing counsel as Class Counsel;

b.  A declaratory judgment that at the commencement of this action Defendant was in violation of the specific requirements of the ADA, described above, the relevant implementing regulations of the ADA, and the specific requirements of the stated laws, as described above, in that the actions Defendant took were not reasonably calculated to ensure that all of its POS Devices would be fully accessible to, and independently usable by, blind or visually impaired individuals;

c.  A declaratory judgment that at the commencement of this action Defendant was in violation of the specific requirements of the ADA, described above, the relevant implementing regulations of the ADA, and the specific requirements of the stated laws as described above, in that the actions Defendant took were not reasonably calculated to ensure that its POP! Program would be fully accessible to blind or visually impaired individuals;

d.  A permanent injunction which directs Defendant to take all steps necessary to come into full compliance with the requirements set forth in the ADA and the state laws set forth herein[1], so that its Loyalty Program and POS Devices are fully accessible to blind or visually impaired individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that it is fully compliant with the relevant requirements of the ADA and the state laws set forth herein, to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully compliant with the law;

---

[1] As stated above, Plaintiffs <u>do not</u> seek injunctive relief under California Civil Code § 55.

e. An award of statutory damages to the individual named Plaintiffs and members of each Subclass;

f. Treble such amounts as provided by Mass. Gen. Laws c. 93A, M.G.L. c. 93A, §9 and 11;

g. Payment of reasonable attorneys' fees and costs; and,

h. The provision of whatever other relief the Court deems just, equitable, and appropriate.

JURY DEMAND: Plaintiff demands a jury trial on all issues.

Respectfully submitted this 11th day of September, 2015.


 *s/ Jeremy Weltman*
Jeremy Weltman, 662293
KERSTEIN, COREN & LICHTENSTEIN LLP
60 Walnut Street, 4th Floor
Wellesley, MA 02481
Tel: 781.997.1600
Fax: 781.997.1633
jweltman@kcl-law.com

Jana Eisinger (*pro hac vice*)
MARTINEZ LAW GROUP, P.C.
720 South Colorado Boulevard
South Tower, Suite 1020
Denver, CO 80246
303.597.4000
eisinger@mlgrouppc.com
lambalot@mlgrouppc.com

Scott C. LaBarre (*pro hac vice*)
LABARRE LAW OFFICES, P.C.
1660 South Albion Street, Suite 918
Denver, CO 80222
303.504.5979
slabarre@labarrelaw.com

Timothy Elder (*pro hac vice*)

TRE LEGAL PRACTICE, LLC
4226 Castanos Street
Fremont, CA 94536
410.415.3493
telder@trelegal.com

ATTORNEYS   FOR   PLAINTIFFS   AND   ALL
OTHER INDIVIDUALS SIMILARLY SITUATED