**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS, BOSTON DIVISION**

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, on behalf of their members and themselves, MARK CADIGAN, MIKE PYYHKALA, LISA IRVING, ARTHUR JACOBS, JEANINE KAY LINEBACK, and HEATHER ALBRIGHT, on behalf of themselves and all others similarly situated), | Civil Action No. 1:15-CV-12984 |
| Plaintiffs, | |
| v. | |
| THE CONTAINER STORE, INC., | |
| Defendant. | |

**DEFENDANT THE CONTAINER STORE, INC.'S**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO**

**ENFORCE ARBITRATION AND CLASS ACTION WAIVERS AND STAY ACTION.**

# TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................1

FACTUAL BACKGROUND ...........................................................................................2

I.      PLAINTIFFS' ALLEGATIONS. ......................................................................2

II.     PLAINTIFFS AGREED TO SUBMIT THEIR CLAIMS TO ARBITRATION
        AND WAIVED THEIR RIGHT TO PARTICIPATE IN A CLASS ACTION
        WHEN THEY ENROLLED IN DEFENDANT'S LOYALTY PROGRAM. ...................2

        1.      Mike Pyykhala. ......................................................................2

        2.      Lisa Irving. .............................................................................3

        3.      Arthur Jacobs. ........................................................................3

        4.      Jeanine Kay Lineback. ...........................................................4

III.    THE AGREEMENT CONTAINS MANDATORY ARBITRATION AND
        CLASS ACTION WAIVER PROVISIONS. ......................................................4

ARGUMENT ................................................................................................................5

I.      THE COURT SHOULD GRANT DEFENDANT'S MOTION TO COMPEL
        ARBITRATION AND PREVENT PLAINTIFFS FROM SERVING AS CLASS
        REPRESENTATIVES. ......................................................................................5

        A.      Legal Standard -- The FAA Favors Arbitration. ......................5

        B.      All Of Plaintiffs' Claims Are Subject To Mandatory Arbitration and
                Plaintiffs Have Waived Their Right To Serve As Class Representatives. .............6

                1.      Plaintiffs Consented To The Agreement, Including The Arbitration
                        And Class Action Waiver Provisions, When They Enrolled In
                        Defendant's Loyalty Program. ....................................................7

                2.      The Arbitration And Class Action Waiver Clauses Govern This
                        Dispute. .....................................................................................11

II.     THE COURT SHOULD STAY THIS ACTION PENDING ARBITRATION. ..............13

CONCLUSION ............................................................................................................13

Certificate Of Conferral .............................................................................................14

CERTIFICATE OF SERVICE ...................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*5381 Partners LLC v. Shareasale.com, Inc.*
   2013 WL 5328324 ...............................................................................................11

*950 Corbindale, L.P. v. Kotts Capital Holdings Limited Partnership*
   316 S.W.3d 191 (Ct. App. Tex. 2010) ..........................................................15, 16

*Allied-Bruce Terminix Cos., Inc. v. Dobson*
   513 U.S. 265 (1995).............................................................................................8

*Arciniaga v. General Motors Corp.*
   460 F.3d 231 (2d Cir. 2006).................................................................................8

*AT&T Mobility LLC v. Concepcion*
   131 S. Ct. 1740 (2011).........................................................................................9

*Bal-Ayal v. Time Warner Cable, Inc.*
   2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ..............................................12, 13

*Chey v. Orbitz Worldwide, Inc.*
   983 F.Supp.2d 1219 (D. Haw. 2013) ..................................................................11

*Crawford v. Beachbody, LLC*
   2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ......................................................12

*Dean Witter Reynolds, Inc. v. Byrd*
   470 U.S. 213 (1985).............................................................................................9

*Dialysis Access Center, LLC v. RMS Lifeline, Inc.*
   638 F.3d 367 (1st Cir. 2011) ..............................................................................10

*Durrett v. ACT, Inc.*
   2011 WL 2696806 (Haw. Ct. App. July 12, 2011)..............................................14

*Fteja v. Facebook, Inc.*
   841 F. Supp. 2d 829 (S.D.N.Y. 2012).................................................................12

*Garcia v. Enterprise Holdings, Inc.*
   78 F.Supp.3d 1125 (N.D. Cal. 2015) ..................................................................11

*Guadagno v. E*Trade Bank*
   592 F. Supp. 2d 1263 (C.D. Cal. 2008) ..............................................................14

*Hancock v. AT&T Co.*
   701 F.3d 1248 (10th Cir. 2012) ..........................................................................13

*Kraft Real Estate Investments, LLC v. HomeAway.com, Inc.*
   2012 WL 220271 (D.S.C. Jan. 24, 2012)............................................................11

*Leatherwood v. Cardservice Int'l, Inc.*
   929 So.2d 616 (Fla. App. 2006)...........................................................................12

*Mendoza v. Microsoft Inc.*
   2014 WL 4540225 (W.D. Wash. Sept. 11, 2014)................................................14

*Merkin v. Vonage America Inc.*
   2014 WL 457942 (C.D. Cal. Feb. 3, 2014)..........................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
   473 U.S. 614 (1985)..............................................................................................14

*Momentis U.S. Corp. v. Perissos Holdings, Inc.*
   2014 WL 3756671 (Ct. App. Tex. 2014).......................................................10, 13

*Momentis U.S. Corp. v. Weisfeld*
   2014 WL 3700697 (Ct. App. Tex. 2014)..............................................................10

*Moore v. Microsoft Corp.*
   741 N.Y.S.2d 91 (2d Dep't 2002).........................................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
   460 U.S. 1 (1983)....................................................................................................9

*Nicosia v. Amazon.com, Inc.*
   --- F. Supp. 3d ---, 2015 WL 500180 (E.D.N.Y. Feb. 4, 2015) ...........................14

*In re Online Travel Co.*
   953 F.Supp.2d 713 (N.D. Tex. 2013) ...................................................................13

*Pazol v. Tough Mudder Incorporated*
   100 F.Supp.3d 74, 76-77 (D. Mass. 2015)............................................................11

*Recursion Software, Inc. v. Interactive Intelligence, Inc.*
   425 F.Supp.2d 756 (N.D. Tex. 2006) ...................................................................11

*Sanders v. Forex Capital Markets, LLC*
   2011 WL 5980202 (S.D.N.Y. Nov. 29, 2011).......................................................13

*Simula, Inc. v. Autoliv, Inc.*
   175 F.3d 716 (9th Cir. 1999) ................................................................................15

*Smallwood v. NCsoft Corp.*
   730 F.Supp.2d 1213 (D. Haw. 2010) .....................................................................10

*Starke v. Gilt Groupe, Inc.*
   2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ..........................................................14

*Swift v. Zynga Game Network, Inc.*
   805 F.Supp.2d 904 (N.D. Cal. 2011) .....................................................................13

*Tresona Multimedia LLC v. Legg.*
   2015 WL 470228 (D. Ariz. Feb. 4, 2015) ...............................................................11

*Vianna v. Doctors' Management Co.*
   27 Cal.App.4th 1186 (1994) ..................................................................................15

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*
   489 U.S. 468 (1989) ..............................................................................................10

*West Consultants, Inc. v. Davis*
   310 P.3d 824 (Wash. Ct. App. 2013) .....................................................................12

*Zaltz v. JDATE*
   952 F. Supp. 2d 439 (E.D.N.Y. July 8, 2013) .........................................................11

<u>Statutes</u>

9 U.S.C. § 1 ...................................................................................................................8

9 U.S.C. § 2 ...................................................................................................................8

9 U.S.C. § 3 .................................................................................................................16

**<u>DEFENDANT THE CONTAINER STORE, INC.'S</u>**

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO</u>**

**<u>ENFORCE ARBITRATION AND CLASS ACTION WAIVERS AND STAY ACTION.</u>**

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 (the "FAA"), defendant The Container Store, Inc. ("Defendant") respectfully moves this Court to enforce the agreement governing plaintiffs National Federal of the Blind, Mike Pyykhala, Lisa Irving, Arthur Jacobs and Jeanine Kay Lineback's ("Plaintiffs") relationship with Defendant and compel Plaintiffs to submit all of their claims to arbitration. The Court should also stay this action pending the outcome of the arbitration.

## <u>INTRODUCTION</u>

Plaintiffs filed this purported class action alleging that Defendant's stores violate the ADA and various state laws because their point-of-sale devices and kiosks are not accessible to the blind. All of the claims asserted by Plaintiffs are subject to mandatory arbitration pursuant to a valid and enforceable arbitration provision contained in Defendant's loyalty program -- POP! Perfectly Organized Perks (the "Agreement"). Plaintiffs consented to the Agreement when they enrolled in Defendant's loyalty program.

In the Agreement, Plaintiffs specifically agreed to: "resolve any disputes through binding and final arbitration instead of through court proceedings. YOU HEREBY WAIVE ANY RIGHT TO A JURY TRIAL OF ANY DISPUTE YOU HAVE WITH THE CONTAINER STORE. NEITHER YOU NOR THE CONTAINER STORE MAY BRING A CLAIM AGAINST THE OTHER AS A CLASS ACTION…." (Agreement at 4, attached as Exhibit A to Manson Decl.) (emphasis in original).

-1-

Accordingly, Plaintiffs have waived their right to participate in a class action and their claims are subject to mandatory arbitration.

## FACTUAL BACKGROUND

I.   **PLAINTIFFS' ALLEGATIONS.**

Plaintiffs allege that Defendant is violating the ADA and various state laws because their point-of-sale devices and kiosks are not accessible to the blind due to the absence of tactically discernable keypad surfaces. Plaintiffs seeks injunctive relief under the ADA and damages under their state-law claims.

II.  **PLAINTIFFS AGREED TO SUBMIT THEIR CLAIMS TO ARBITRATION AND WAIVED THEIR RIGHT TO PARTICIPATE IN A CLASS ACTION WHEN THEY ENROLLED IN DEFENDANT'S LOYALTY PROGRAM.**

Plaintiffs agreed to arbitrate their claims and not to participate in a class action when they signed up for Defendant's loyalty program.

1.   Mike Pyykhala.

Mike Pyykhala ("Pyykhala") enrolled in Defendant's loyalty program using a store tablet at the register by providing an email address on December 14, 2014. (Manson Decl. ¶3). As a condition of enrollment, Pyykhala had to affirmatively agree to the terms and conditions of the loyalty program (including the mandatory arbitration and class action waiver provisions) by pressing a box that read: "I ACCEPT" appearing on the same screen as the terms and conditions. (Manson Decl. ¶¶ 2 and 3). The cashier was available to read the terms and conditions. (Id.). Pyykhala could not have completed the enrollment process without agreeing to the terms and conditions. (Id.). An email was also sent to Pyykhala at the time of enrollment which contained a link to the terms and conditions. (Id.). In addition, several promotional emails are sent each month to members of Defendant's loyalty program, including Pyykhala, and each email contains a link to the terms and conditions. (Id.).

2.      Lisa Irving.

Lisa Irving ("Irving") enrolled in Defendant's loyalty program using a store tablet by providing an email address on May 18, 2015.  (Manson Decl. ¶4).  As a condition of enrollment, Irving had to affirmatively agree to the terms and conditions of the loyalty program (including the mandatory arbitration and class action waiver provisions) by pressing a box that read: "I ACCEPT" appearing on the same screen as the terms and conditions.  (Manson Decl. ¶¶ 2 and 4).  A customer representative was available to read the terms and conditions.  (Id).  Irving could not have completed the enrollment process without agreeing to the terms and conditions.  (Id.).  An email was also sent to Irving at the time of enrollment which contained a link to the terms and conditions.  (Id.).  In addition, several promotional emails are sent each month to members of Defendant's loyalty program, including Irving, and each email contains a link to the terms and conditions.  (Id.).

3.      Arthur Jacobs.

Arthur Jacobs ("Jacobs") enrolled in Defendant's loyalty program using a store tablet at the register by providing an email address on May 7, 2015.  (Manson Decl. ¶5).  As a condition of enrollment, Jacobs had to affirmatively agree to the terms and conditions of the loyalty program (including the mandatory arbitration and class action waiver provisions) by pressing a box that read: "I ACCEPT" appearing on the same screen as the terms and conditions.  (Manson Decl. ¶¶ 2 and 5).  The cashier was available to read the terms and conditions.  (Id).  Jacobs could not have completed the enrollment process without agreeing to the terms and conditions. (Id.).  An email was also sent to Jacobs at the time of enrollment which contained a link to the terms and conditions.  (Id.).  In addition, several promotional emails are sent each month to members of Defendant's loyalty program, including Jacobs, and each email contains a link to the terms and conditions.  (Id.).

       4.     <u>Jeanine Kay Lineback.</u>

Jeanine Kay Lineback ("Lineback") enrolled in Defendant's loyalty program online by providing an email address on May 28, 2015.  (Manson Decl. ¶6).  As a condition of enrollment, Lineback had to affirmatively agree to the terms and conditions of the loyalty program (including the mandatory arbitration and class action waiver provisions) by checking a box that read: "☐ I agree to the <u>POP! terms and conditions</u>" and that contained a link to the terms and conditions.  (Manson Decl. ¶¶ 2 and 6).  Lineback could not have completed the enrollment process without agreeing to the terms and conditions.  (Id.).  An email was also sent to Lineback at the time of enrollment which contained a link to the terms and conditions.  (Id.).  In addition, several promotional emails are sent each month to members of Defendant's loyalty program, including Lineback, and each email contains a link to the terms and conditions.  (Id.).

The Agreement also states that members who do not agree to be bound by the terms and conditions should cancel their membership.  (Agreement at 1, attached as Exhibit A to Manson Decl.).

**III.   THE AGREEMENT CONTAINS MANDATORY ARBITRATION AND CLASS ACTION WAIVER PROVISIONS.**

The Agreement that Plaintiffs consented to contains mandatory arbitration and class action waiver provisions.  The provisions read as follows:

> "You agree that The Container Store and you will resolve any disputes through binding and final arbitration instead of through court proceedings.  YOU HEREBY WAIVE ANY RIGHT TO A JURY TRIAL OF ANY DISPUTE YOU HAVE WITH THE CONTAINER STORE.  NEITHER YOU NOR THE CONTAINER STORE MAY BRING A CLAIM AGAINST THE OTHER AS A CLASS ACTION, REPRESENTATIVE ACTION, OR PRIVATE ATTORNEY GENERAL ACTION.  NEITHER YOU NOR THE CONTAINER STORE MAY ACT AS A PRIVATE ATTORNEY GENERAL OR CLASS REPRESENTATIVE, NOR PARTICIPATE AS A MEMBER OF

> A CLASS OF CLAIMANTS WITH RESPECT TO ANY
> DISPUTE OR CLAIM BETWEEN  US.  These POP! Program
> terms evidence a transaction in interstate commerce, and thus the
> arbitration will be subject to the Federal Arbitration Act…"

(Agreement, attached as Exhibit A to Manson Decl.) (emphasis in original).

The mandatory arbitration and class action waiver provisions apply to "any disputes" between Defendant and members of its loyalty program.  Thus, all of Plaintiffs' claims are subject to mandatory arbitration and Plaintiffs cannot serve as class representatives.

## ARGUMENT

### I.   THE COURT SHOULD GRANT DEFENDANT'S MOTION TO COMPEL ARBITRATION AND PREVENT PLAINTIFFS FROM SERVING AS CLASS REPRESENTATIVES.

#### A.   Legal Standard -- The FAA Favors Arbitration.

"[I]t is difficult to overstate the strong federal policy in favor of arbitration. . ." *Arciniaga v. General Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006).  The FAA, codified at 9 U.S.C. § 1, *et seq.*, expresses this strong public policy in favor of arbitration.  The FAA applies to any written arbitration agreement contained in a contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.

The FAA reflects Congress' direct intent to enforce agreements to arbitration and affirms the principle that federal law favors arbitration.  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270 (1995).  Section 4 of the FAA provides that a court "shall" order arbitration if it determines that an agreement to arbitrate the controversy exists:

> "A party aggrieved by the alleged failure, neglect, or refusal of
> another to arbitrate under a written agreement for arbitration may
> petition any United States district court . . . for an order directing
> that such arbitration proceed in the manner provided for in such
> agreement . . . The court shall hear the parties, and upon being
> satisfied that the making of the agreement for arbitration or the
> failure to comply therewith is not in issue, the court shall make an

> order directing the parties to proceed in arbitration in accordance
> with the terms of the agreement."

9 U.S.C. § 4 (emphasis added).  As the United States Supreme Court has stated:

> "By its terms, the [FAA] leaves no place for the exercise of
> discretion by a district court, but instead mandates that district
> courts *shall* direct the parties to proceed to arbitration on issues as
> to which an arbitration agreement has been signed.  9 U.S.C.
> §§ 3,4."

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (italics in original).

Federal courts are to come down strongly in favor of arbitration over a judicial forum to resolve disputes that are covered by an arbitration agreement.  Indeed, the Supreme Court recently reaffirmed the "liberal federal policy favoring arbitration."  In *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011), the Supreme Court stated that "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms."  (internal citations omitted).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . ."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).   It is also well established that a party's agreement to waive his right to bring a class action lawsuit is enforceable.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).

### B.   All Of Plaintiffs' Claims Are Subject To Mandatory Arbitration and Plaintiffs Have Waived Their Right To Serve As Class Representatives.

"A party seeking to compel arbitration under the FAA must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope….In addition, it is also presumed under federal law that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability."  *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375-376 (1st Cir. 2011).  As discussed below, each of these

requirements is met, and the Court should issue an order compelling arbitration of Plaintiffs' claims.[1]

> 1.    Plaintiffs Consented To The Agreement, Including The Arbitration And Class Action Waiver Provisions, When They Enrolled In Defendant's Loyalty Program.

Whether the parties agreed to arbitrate is generally determined by state contract law. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989).   The Agreement states that the law of Texas shall govern the parties' relationship. (Agreement at 4, attached as Exhibit A to Manson Decl.) .   Under Texas law, the party seeking arbitration must show that the agreement meets all contract elements such as offer, acceptance, and consent. *Momentis U.S. Corp. v. Weisfeld*, 2014 WL 3700697 (Ct. App. Tex. 2014).

Courts have repeatedly held that binding contracts are made when a party takes some action demonstrating that he has at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance, such as checking/clicking a box labeled "I agree" on a screen that contains a link to the terms and conditions.  *See, e.g., Momentis U.S. Corp. v. Weisfeld*, 2014 WL 3700697 (Ct. App. Tex. 2014) (vacating trial court's denial of motion to compel arbitration because plaintiff clicked "I agree" option to the terms and conditions containing arbitration provision and there were links to PDF versions of the terms and conditions); *Smallwood v. NCsoft Corp.*, 730 F.Supp.2d 1213 (D. Haw. 2010) (court, applying Texas law, held that User Agreement for a videogame enforceable where the plaintiff was required to agree to it by clicking "I agree"); *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F.Supp.2d 756, 781-783 (N.D. Tex. 2006)  (holding clickwrap licenses to be valid and

---

[1] The relationship between the parties indisputably involves interstate commerce since the parties reside in different states.  *See, e.g., Momentis U.S. Corp. v. Perissos Holdings, Inc.*, 2014 WL 3756671, *2 (Ct. App. Tex. 2014) ("A contract between parties residing in different states involved interstate commerce and is governed by the FAA").

enforceable where it was not possible for a user to download plaintiff's software without clicking

a button to accept a license); *Pazol v. Tough Mudder Incorporated*, 100 F.Supp.3d 74, 76-77 (D.

Mass. 2015) ("Nor does the fact that Plaintiffs clicked an online checkbox to indicate their assent

affect the analysis.  Such 'clickwrap' agreements are commonly enforced in Massachusetts and

Federal Courts"); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 451-54 (E.D.N.Y. July 8, 2013)

(enforcing forum selection clause where there is a check box which a prospective member is

required to click confirming that he or she has read and agreed to terms of service); *5381

Partners LLC v. Shareasale.com, Inc.*, 2013 WL 5328324, *3, fn. 2 and *5-8 (E.D.N.Y. Sept. 23,

2013) (enforcing forum selection clause where evidence showed plaintiff required to click a

specific box accepting agreement); *Moore v. Microsoft Corp.*, 741 N.Y.S.2d 91, 92 (2d Dep't

2002) (contract formed when "[t]he terms of the [agreement] were prominently displayed on the

program user's screen before the software could be installed," and "the program's user was

required to indicate assent to the [agreement] by clicking on the 'I agree' icon before proceeding

with the download . . ."); *Tresona Multimedia LLC v. Legg*., 2015 WL 470228, at *12 (D. Ariz.

Feb. 4, 2015) (upholding forum selection clause in User Agreement because user had to click on

a box to create an account); *Garcia v. Enterprise Holdings, Inc*., 78 F.Supp.3d 1125 (N.D. Cal.

2015) (holding that the plaintiff could not have used the Zimride app without assenting to the

app's Terms of Use and Privacy Policy); *Chey v. Orbitz Worldwide, Inc*., 983 F.Supp.2d 1219,

1232, fn. 6 (D. Haw. 2013) (enforcing the forum selection clause in Orbtiz's terms and conditions

where the plaintiff was required to click on an "Agree and Book" icon referring to booking terms

and conditions in order to book a flight); *Kraft Real Estate Investments, LLC v. HomeAway.com,

Inc*., 2012 WL 220271 (D.S.C. Jan. 24, 2012) (granting summary judgment because all renters

and potential advertisers had to assent to a click-through "I agree" button to access any of the

websites, where a complete copy of the Terms of Service agreement was available via hyperlink directly below the button); *Bal-Ayal v. Time Warner Cable, Inc.*, 2006 WL 2990032, at *9-11 (S.D.N.Y. Oct. 16, 2006) (program required user to click through "accept" buttons on screens that showed relevant agreements); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) (enforcing forum selection provision where the "sign-up" page for an account provided that a user was agreeing to the terms of service which were hyperlinked therein); *Leatherwood v. Cardservice Int'l, Inc*., 929 So.2d 616, 617 (Fla. App. 2006) (upholding the enforceability of a venue selection clause in a click-to-accept contract where the appellant clicked the "I accept" button); *West Consultants, Inc. v. Davis*, 310 P.3d 824, 827-828 (Wash. Ct. App. 2013) (enforcing a forum selection clause in a software clickwrap agreement over plaintiff's objections that it had not read the contract); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *2-3 (S.D. Cal. Nov. 5, 2014)  (upholding terms and conditions where the "Place Order" button was directly below the sentence, "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions"); *Merkin v. Vonage America Inc*., 2014 WL 457942, at *3 (C.D. Cal. Feb. 3, 2014) (holding Vonage's Terms of Service to form a binding contract where Vonage presented evidence that agreement to its TOS was required for a user to be able to register for its service).

In this case, as explained above, all of the Plaintiffs except Lineback indicated their assent to the Agreement by pressing the "I ACCEPT" box when the option was presented to them, appearing on the same screen as the terms and conditions.  Lineback indicated her assent by checking a box that read: "☐ I agree to the <u>POP! terms and conditions</u>" directly next to a hyperlink to the terms and conditions.  Plaintiffs concede that they enrolled in Defendant's

loyalty program and there is no way to complete the enrollment process without agreeing to the arbitration and class action waiver provisions.

Courts routinely compel arbitration in similar factual circumstances. *See, e.g., Momentis U.S. Corp. v. Perissos Holdings, Inc*., 2014 WL 3756671 (Ct. App. Tex. 2014) (vacating trial court's denial of motion to compel arbitration because "links to PDF versions of the Terms of Agreement and of the Policies were available on the webpage….[plaintiff] had to select an option labeled 'I agree'"); *In re Online Travel Co.*, 953 F.Supp.2d 713 (N.D. Tex. 2013) (granting the defendant's motion to compel individual arbitration based on the court's finding that website users manifested their assent to Travelocity's user agreement which contained enforceable arbitration and class action waiver provisions by clicking on a "button … located directly above a notice explaining that, by clicking the button, the user agrees to the policies set forth in the User Agreement, which was accessible via a hyperlink" ); *Sanders v. Forex Capital Markets, LLC*, 2011 WL 5980202, *3-5 (S.D.N.Y. Nov. 29, 2011) (enforcing arbitration agreement where plaintiff indicated his assent to arbitration clause by clicking "yes" when prompted if he agreed to such terms); *Bar-Ayal v. Time Warner Cable, Inc.*, 2006 WL 2990032, *3-5, 9 (S.D.N.Y. Oct. 16, 2006) (enforcing arbitration agreement where software included on CD would only install if customer clicked button accepting terms of customer agreement containing arbitration provision); *Swift v. Zynga Game Network, Inc*., 805 F.Supp.2d 904 (N.D. Cal. 2011)  (enforcing arbitration provision where the plaintiff admitted that "she was required to and did click on an 'Accept' button directly above a statement that clicking on the button served as assent to the YoVille terms of service along with a blue hyperlink directly to the terms of service."); *Hancock v. AT&T Co*., 701 F.3d 1248, 1256-1258 (10th Cir. 2012) (affirming dismissal based on enforceable forum selection and arbitration provisions in an agreement that

consumers were required to accept by clicking on an "I Acknowledge" button); *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration agreement where "sign-up box" stated that plaintiff agreed to be bound by terms of membership that included an arbitration provision); *Guadagno v. E\*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) (upholding arbitration clause contained in terms and conditions accessible via a hyperlink next to a button on a registration page); *Nicosia v. Amazon.com, Inc.*, --- F. Supp. 3d ---, 2015 WL 500180, \*7 (E.D.N.Y. Feb. 4, 2015) (finding plaintiff assented to mandatory arbitration clause when he signed up for an account and put on inquiry notice of the current terms of purchase every time he made a purchase); *Durrett v. ACT, Inc.*, 2011 WL 2696806, at \*4-6 (Haw. Ct. App. July 12, 2011) (finding intent to submit to arbitration where a minor checked a box consenting to the terms that included arbitration provisions); *Mendoza v. Microsoft Inc.*, 2014 WL 4540225, at \*3 (W.D. Wash. Sept. 11, 2014)  (upholding arbitration clause and class action waiver in clickwrap agreement presented to users when accessing Xbox LIVE services).

Thus, the evidence adequately shows that Plaintiffs assented to the Agreement, including the arbitration and class action waiver provisions.

2.      The Arbitration And Class Action Waiver Clauses Govern This Dispute.

Once a valid agreement to arbitrate has been established, courts must determine whether the arbitration agreement covers the nonmovants' claims.  To require arbitration, the factual allegations need only "touch matters" covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n. 13 (1985).  "The policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation

which could cover the dispute." *950 Corbindale, L.P. v. Kotts Capital Holdings Limited Partnership,* 316 S.W.3d 191, 195 (Ct. App. Tex. 2010).

"The presumption of arbitrability is particularly applicable when the clause is broad; that is, it provides for arbitration of 'any dispute arising between the parties.'" *950 Corbindale, L.P. v. Kotts Capital Holdings Limited Partnership,* 316 S.W.3d 191, 195 (Ct. App. Tex. 2010). The agreement to arbitrate "any dispute" is broad enough to cover both contract and tort claims. *Vianna v. Doctors' Management Co.,* 27 Cal.App.4th 1186, 1189-1190 (1994). An arbitration clause containing the phrase "all disputes arising in connection with this Agreement" or "any and all disputes arising under the arrangements contemplated hereunder" must be interpreted liberally. *See, e.g., Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 720 (9th Cir. 1999) (collecting cases).

Here, Plaintiffs' claims fit squarely within the scope of the arbitration and class action waiver provisions. Plaintiffs assert claims that directly challenge the legality of Defendant's loyalty program. Plaintiffs' other claims challenge the way Defendant conducts transactions through its point-of-sale devices and users must associate each transaction with their membership in order to participate in Defendant's loyalty program. (Manson Decl. ¶2).

The provisions at issue contain no scope limitations:

> "You agree that The Container Store and you will resolve ***any disputes*** through binding and final arbitration instead of through court proceedings. YOU HEREBY WAIVE ANY RIGHT TO A JURY TRIAL OF ANY DISPUTE YOU HAVE WITH THE CONTAINER STORE. NEITHER YOU NOR THE CONTAINER STORE MAY BRING A CLAIM AGAINST THE OTHER AS A CLASS ACTION, REPRESENTATIVE ACTION, OR PRIVATE ATTORNEY GENERAL ACTION. NEITHER YOU NOR THE CONTAINER STORE MAY ACT AS A PRIVATE ATTORNEY GENERAL OR CLASS REPRESENTATIVE, NOR PARTICIPATE AS A MEMBER OF

A CLASS OF CLAIMANTS ***WITH RESPECT TO ANY DISPUTE OR CLAIM BETWEEN  US***.

(Agreement at 4, attached as Exhibit A to Manson Decl.).

Thus, these provisions constitute "broad-form" clauses covering any claim or dispute between Plaintiffs and Defendant.  *950 Corbindale, L.P. v. Kotts Capital Holdings Limited Partnership,* 316 S.W.3d 191, 196 (Ct. App. Tex. 2010) (holding that "absent any express provision excluding a particular grievance from arbitration, only the most forceful evidence of purpose to exclude the claim from arbitration can prevail").

## II.      THE COURT SHOULD STAY THIS ACTION PENDING ARBITRATION.

When there is a valid arbitration agreement, the FAA mandates that the action be stayed pending arbitration.  The FAA states:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties to stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . ."

9 U.S.C. § 3.

Therefore, this Court should stay this lawsuit pending completion of the arbitration proceedings.

## CONCLUSION

For all of the above reasons, Defendant respectfully requests that the Court (1) issue an order compelling arbitration of Plaintiffs' claims; (2) precluding Plaintiffs from serving as class representatives; and (3) staying this lawsuit pending the outcome of the arbitration.

## Certificate Of Conferral

Pursuant to L.R. D. Mass. 7.1(a)(2), undersigned counsel for Defendant certifies that defense counsel conferred with Plaintiffs' counsel regarding the content of this motion and attempted in good faith to resolve or narrow the issues.  Unfortunately, the parties were not able to resolve their differences as Plaintiffs would not agree that their claims are subject to arbitration or that this case should be stayed pending arbitration.

DATED:  February 2, 2016          SEDER & CHANDLER LLP

> Howard E. Stempler
> SEDER & CHANDLER LLP
> 339 Main Street, Suite 300
> Worcester, Massachusetts 01608
> Telephone:  508.471.3018
> Facsimile:  508.831.0955
> hstempler@sederlaw.com
>
> *and*
>
>
> By: /s/ Gregory F. Hurley
> GREGORY F. HURLEY
> ghurley@sheppardmullin.com
> *Pro Hac Vice Pending*
> MICHAEL J. CHILLEEN
> mchilleenr@sheppardmullin.com
> *Pro Hac Vice Pending*
> SHEPPARD, MULLIN, RICHTER &
> HAMPTON LLP
> 650 Town Center Drive, Fourth Floor
> Costa Mesa, California 92626
> Telephone: 714.513.5100
> Facsimile: 714.513.5130
>
> *Attorneys for Defendant*
> *The Container Store, Inc.*

## CERTIFICATE OF SERVICE

I, Gregory F.  Hurley, certify that on this 2nd day of February, 2016, I caused a true copy of  the  foregoing Defendant the Container Store, Inc.'s Memorandum of Law in Support of Motion to Enforce Arbitration and Class Action Waivers and Stay Action to be filed  with the Clerk of the United States District Court for the District of Massachusetts through the  Court's Electronic Case Filing system ("ECF") and to be served through ECF upon counsel of record, with paper copies sent to any person indicated on ECF as a non-registered participant:

Jeremy Weltman, Esq.
KERSTEIN, COREN & LICHTENSTEIN LLP
60 Walnut Street, 4th Floor
Wellesley, MA 02481
Telephone:  781.997.1600
Facsimile:  781.997.1633
jweltman@kcl-law.com

Jana Eisinger, Esq.
*Pro Hac Vice*
MARTINEZ LAW GROUP, P.C.
720 South Colorado Boulevard
South Tower, Suite 1020
Denver, CO 80246
Telephone:  303.597.4000
eisinger@mlgrouppc.com
lambalot@mlgrouppc.com

Scott C. LaBarre, Esq.
*Pro Hac Vice*
LABARRE LAW OFFICES, P.C.
1660 South Albion Street, Suite 918
Denver, CO 80222
Telephone:  303.504.5979
slabarre@labarrelaw.com

Timothy Elder, Esq.
TRE LEGAL PRACTICE, LLC
4226 Castanos Street
Fremont, CA 94536
Telephone:  410.415.3493
telder@trelegal.com