## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
NATIONAL FEDERATION OF THE BLIND, on   *
behalf of their members and itself, MARK   *
CADIGAN, MIKA PYYHKALA, LISA IRVING,   *
ARTHUR JACOBS, JEANINE KAY LINEBACK,   *
and HEATHER ALBRIGHT, on behalf of   *
themselves and all others similarly situated,   *
                                                *   C.A. No. 1:15-cv-12984-NMG
Plaintiffs,                                     *
                                                *
v.                                              *
                                                *
THE CONTAINER STORE, INC.                       *
                                                *
Defendant.                                      *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO ENFORCE ARBITRATION,
## AND CLASS ACTION WAIVERS AND STAY ACTION

# Table of Authorities

## United States Supreme Court Cases

*AT & T Mobility LLC v. Concepcion*, 563 U.S. 333 (2001) ............................................... 8, 14, 17

*AT & T Technologies Inc., v. Comm'n Workers of Am.*, 475 U.S. 643 (1986)............................ 17

*Granite Rock Co. v. International Brotherhood of Teamsters,* 561 U.S. 287 (2010)................ 5, 8

*United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574 (1960).................................... 7

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Stanford Junior Univ.*, 489 U.S. 468 (1989)......... 13

## Federal Cases

*Acher v. Fujitsu Network Comms., Inc.*, 354 F. Supp. 2d 26 (D. Mass. 2004)....................... 17, 18

*Bowlby  v. Carter Manufac. Corp.*, 138 F. Supp. 2d 182 (D. Mass. 2001) ................................. 13

*Campbell v. Gen. Dynamics Gov't. Sys. Corp.*, 407 F.3d 546 (1st Cir. 2005) ....................... 14, 15

*Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d, 357 (1st Cir. 2011)...................... 10

*Dominichetti v. The Salter School, LLC*, No. 12-11311-FDS, 2013 U.S. Dist. LEXIS 57201 (D.

Mass. 2013). .......................................................................................................... 19, 20

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D Cal. 2012)................... 24

*InterGen N.V. v. Grina*, 344 F.3d 134 (1st Cir. 2003).................................................................... 9

*McCarthy v. Azure*, 22 F.3d 351 (1st Cir. 1994) ........................................................................ 12

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, (1st Cir. 1999) ........ 12, 16

*Schacter v. Circuit City Stores, Inc.*, 433 F. Supp. 2d 140 (2006)................................................ 13

*Skirchak v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. 2007)...................................... 20, 21

*Whirlpool Corp. v. Grigoleit Co.*, No. 1:06-cv-0195, 2011 US Dist. WL 3879486 (W.D. Mich.

2011)........................................................................................................................ 21

## State Cases

*Ajemian v. Yahoo*, 83 Mass. App. Ct. 565 (2013) ........................................................................ 13

*Miller v. Cotter*, 448 Mass. 671 (2007) .................................................................................... 20

*Warfield v. Beth Israel Deaconess Medical Center, Inc.*, 454 Mass. 390 (2009)........................ 16

## Federal Statutes

28 C.F.R. § 36.101 *et seq.* ......................................................................................................... 21

42 U.S.C. § 12101........................................................................................................................ 21

42 U.S.C. § 12102........................................................................................................................ 21

9 U.S.C. § 3.................................................................................................................................... 8

9 U.S.C. § 4................................................................................................................................ 6, 8

## State Statutes

N.Y. Civil Rights Law § 40-c(2) ................................................................................................. 16

N.Y. Exec. Laws. § 296(2)(a) ..................................................................................................... 16

Tex. Hum. Res. Code Ann. § 121.003 ........................................................................................ 16

## Treatises

21 WILLISTON ON CONTRACTS § 57:31 (4th ed.) .................................................................. 23

# **TABLE OF CONTENTS**

I.      INTRODUCTION …………………………………………………………………..1

II.     FACTUAL BACKGROUND …………………………………………………………2

III.    ARGUMENT ……………………………………………………………………...5

        A.     The Evidence Establishes that None of the Plaintiffs Agreed to the Loyalty Program Rules……………………………………………………………………5

        B.     Defendant Cannot Effect a Waiver of Plaintiffs' Class-Wide Discrimination Claims Based on the Notice It Claims Was Provided…………………………..10

             1.     A Heightened Level of Scrutiny Is Required When Considering the Dismissal of Discrimination Claims………………………...…………10

             2.     Even Under Normal Scrutiny, Notice Here Was Grossly Inadequate…………………………………………………………..13

        C.     The Arbitration Clause is Unenforceable Because It is Illusory………………..14

        D.     The Arbitration Clause Cannot Be Enforced Because it is Unconscionable...…15

        E.     Plaintiffs' Claims Do Not Arise from the Loyalty Program Rules………..……17

        F.     TSC' Motion For a Stay Should Be Denied………………………...…………..19

IV.     CONCLUSION ……………………………………………………………………19

Plaintiffs National Federation of the Blind ("NFB"), Mark Cadigan, Mika Pyyhkala, Lisa Irving, Arthur Jacobs, Jeanine Kay Lineback, and Heather Albright (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated hereby submit the following Memorandum of Law in Opposition to the Motion to Enforce Arbitration and Class Action Waivers and Stay Action of Defendant The Container Store, Inc. ("TCS").

## I.      INTRODUCTION

TCS' Motion to Enforce Arbitration and Class Action Waivers and Stay Action (hereafter referred to as "Motion" or "Motion to Compel Arbitration") seeks to require some of the named Plaintiffs to arbitrate the discrimination claims at issue in this lawsuit and give up their right to assert representative claims in this case, based solely on the untenable assertion that these blind individuals somehow consented to terms and conditions that were never presented to them in *any* form that they could hear, read, review and/or accept.  Ironically, TCS seeks to dismiss Plaintiffs' lawsuit alleging that TCS discriminates against them and other blind individuals by insisting on the use of point-of-sale devices ("POS Devices") and kiosks that are not accessible to the blind by relying on terms and conditions that allegedly appeared *on these very same inaccessible devices*.

TCS brought this baseless motion more than six months after the initial Complaint was filed in a blatant effort to needlessly delay and hinder the litigation proceedings in this case.  TCS is attempting to avoid class-wide treatment and force Plaintiffs into arbitration on an individual basis, although TCS' Motion fails to demonstrate that any enforceable contract to arbitrate was ever formed.

Although Plaintiffs served TCS with discovery responses in November of 2015 – more than three months ago – that clearly and unequivocally state that *none* of the individual named Plaintiffs were presented with or agreed to arbitrate their claims against TCS, TCS still brought

1

the instant Motion, ignoring Plaintiffs' representations, while at the same time refusing to produce any discovery of its own. Because TCS has not demonstrated that there was any notice to the Plaintiffs of the terms and conditions TCS seeks to bind them to, let alone reasonable and appropriate notice, nor was there any manifestation of assent by the Plaintiffs, no contract was ever formed and TCS' motion must fail.

TCS' motion also fails for several additional reasons. First, TCS relies on terms and conditions of its POP! Perfectly Organized Perks loyalty program (hereafter the "Loyalty Program Terms and Conditions") which permit TCS to unilaterally change the terms at any time and are therefore illusory. *See* Ex. A to Manson Decl. p. 2 ¶ 4 [Doc No. 42-1].  Second, the arbitration provisions buried in the Loyalty Program Terms and Conditions are so one-sided as to be unconscionable.  *See* Ex. A to Manson Decl. p. 4 ¶5 and p. 5 ¶ 4 [Doc No. 42-1].  Finally, TCS' motion must fail because TCS relies exclusively on provisions of the Loyalty Program Terms and Conditions even though Plaintiffs' claims do not arise out of the Loyalty Program and, in fact, Plaintiffs' claims challenge the very ability of blind customers to equally access the Loyalty Program.

## II.     FACTUAL BACKGROUND

The National Federation of the Blind and six (6) legally blind individuals residing in the states of Massachusetts, New York, and Texas filed the instant lawsuit on July 20, 2015, seeking injunctive relief and damages for TCS' ongoing and repeated violations of the Americans with Disabilities Act ("ADA") and the discrimination laws of the aforementioned states.  *See* NFB Compl. ¶ 3 [Doc No. 1].  Specifically, Plaintiffs allege that legally blind individuals, including Plaintiffs, who shop at TCS' locations throughout the United States should have equal access to payment methods and loyalty programs offered by TCS. By

providing POS Devices that make use of a visual, touch screen interface that is inaccessible to the blind, TCS prevents blind customers from independently entering a secure PIN in order to make a debit card purchase, or to consummate a credit card purchase that requires a PIN.  *See* NFB Comp. ¶ 3 [Doc No. 1].  Additionally, by only allowing access to its Loyalty Program through touch screen interfaces at its stores, TCS requires its blind customers to verbally disclose their personal telephone number or email address to a staff member in order to register.  *Id.*  TCS is a place of public accommodation as defined under the Americans with Disabilities Act ("ADA") and, therefore, has an obligation to provide equivalent access to its goods and services to persons with disabilities. Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 328 (1990).  By its actions, Plaintiffs allege that TCS has violated the ADA and the discrimination laws of Massachusetts, Texas and New York. *See* NFB Compl. ¶ 15 [Doc No. 1].

On November 4, 2015, Plaintiffs served discovery on TCS.  Pl. NFB Mot. To Compel Dep. Attendance, Produc. of Doc's, and Resp. to Interrog. from Def. the Container Store, Inc. p. 2 [Doc. No. 25].  Defendants refused to produce any responsive discovery on the grounds that TCS intended to file a motion to compel arbitration.  *Id.* at 5.  On January 4, 2016, Plaintiffs filed a motion to compel discovery from the Defendant and for sanctions.  *Id.*  While the motion to compel discovery was pending, and more than six (6) months after the initial Complaint was filed, TCS brought the instant Motion on February 2, 2016. Def. The Container Store, Inc.'s Mem. of Law in Supp. of Mot. to Enforce Arb. and Class Action Waivers and Stay Action [Doc. No. 42].  Although Defendant has not even challenged the claims brought by the NFB, Mark Cadigan or Heather Albright (or the classes and subclasses they seek to represent,) TCS refused to provide any discovery relating to *any* claims in the lawsuit, including these claims

3

that are indisputably *not* subject to arbitration. This Court has adjourned a hearing on Plaintiffs' motion to compel discovery until the instant Motion is submitted.   *See* Electronic Notice Resetting Hr'g on Mot. (Feb. 2, 2016) [25] [Doc. No. 41].

By the instant Motion, TCS claims that three of the named Plaintiffs, Plaintiffs Pyykhala, Irving, and Jacobs consented to arbitration by making a purchase through the Loyalty Program at a TCS retail store.   TCS claims that the Loyalty Program Terms and Conditions (that contain an arbitration provision and class-action waiver) were allegedly visible on a flat-screen tablet device that is used to register customers for the Loyalty Program. *See* Manson Decl. ¶¶ 3, 4, 5 [Doc. No. 42.1].   Importantly, TCS does not allege that a cashier read these terms and conditions to the named Plaintiffs and obtained their consent, nor does TCS claim that these blind individuals were presented with TCS' Terms and Conditions in a format that was accessible to them and would permit them to independently read, review and accept the terms.   *See* Manson Dec. ¶¶ 3, 4, 5. [Doc. No. 42.1]   Indeed, the core allegations of Plaintiffs' Complaint concern TCS' failure to provide a method of Loyalty Program enrollment that is accessible to blind customers, such as its refusal to provide text-to-speech mechanisms that are readily available and commonly used in taxicab payment terminals, and on iPhones and other tablet devices.   *See* NFB Comp. p. 3. [Doc. No. 1].

On November 19, 2015, Plaintiffs responded to TCS' interrogatories and document requests.   Even though these responses were provided seventy-five (75) days before TCS filed its Motion, TCS completely disregards the Plaintiff's discovery responses and Plaintiffs' unequivocal representations that they were never presented with, and never agreed to, arbitrate their claims.   *See* Pl. Mike Pyykhala's Response to Def. Container Store Inc.'s Interrogatories to Pl. Mike Pyykhala (Set One) (Ex. A.), Pl. Lisa Irving's Response to Def. Container Store,

Inc.'s Interrogatories to Pl. Lisa Irving (Set One) (Ex. B), Pl. Arthur Jacobs's Response to Def.

Container Store, Inc.'s Interrogatories to Pl. Arthur Jacobs (Set One) (Ex. C), and Pl. Jeanine

Lineback's Response to Def. Container Store, Inc.' Interrogatories to Pl. Jeanine Lineback (Set

One) (Ex. D).    Indeed, Plaintiffs' discovery responses clearly indicate that cashiers, not

Plaintiffs, entered the information that was necessary to enroll in the TCS Loyalty Program

when enrollment was at a TCS store.  *See* Ex. A, B, and C.  Similarly, TCS broadly concludes

that Plaintiff Jeannine Lineback "had to agree" to the POP terms and conditions in order to

enroll in the program online outside of a TCS store.  *See* Manson Decl.   ¶ 6. [Doc. No. 42.1].

Yet, Lineback's discovery responses demonstrate that she was not provided with any terms and

conditions that were accessible to her when she signed up on-line, and she did not agree to

arbitrate her claims or waive her right to act as a class representative.  *See* Ex. D.

## III.    ARGUMENT

### A.    THE EVIDENCE ESTABLISHES THAT NONE OF THE PLAINTIFFS AGREED TO THE LOYALTY PROGRAM RULES

TCS relies on the Federal Arbitration Act, 9 U.S.C., §§ 3 & 4 (the "FAA"), to argue that

the Plaintiffs should be forced to arbitrate their claims.[1]  Admittedly, there is a strong federal

policy in favor of arbitration, but it *only* applies where both parties have received notice of and

manifested assent to a written agreement to arbitrate, under ordinary state law principles

governing the formation of contracts.  *See Granite Rock Co. v. International Brotherhood of*

*Teamsters,* 561 U.S. 287, 297 (2010).  A party seeking to stay proceedings under section 3 or

to compel arbitration under section 4 of the FAA must demonstrate that there is a valid

---

[1] The Plaintiffs do not dispute that the relationship between the parties involves interstate commerce and, therefore, is governed by the FAA.

agreement to arbitrate, that the movant is entitled to invoke the arbitration clause, that the other party is bound by the clause, and that the claim asserted comes within the clause's scope. *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003).   The party seeking to compel arbitration, here TCS, has the burden of proving, by a preponderance of the evidence, the existence of a valid and binding arbitration agreement.   *Id*. Here, TCS asserts that all of the claims presented by four of the individual Plaintiffs are subject to mandatory arbitration pursuant to a provision contained in the Loyalty Program Terms and Conditions.  Ex. A to the Manson Decl. p. 5. [Doc. No. 42.2].   TCS alleges that Plaintiffs Pyyhkala, Irving, Jacobs and Lineback consented to the Terms and Conditions when they enrolled in the Defendant's Loyalty Program.[2]   Although TCS does not claim that Plaintiff NFB and individual Plaintiffs Cadigan and Albright consented to arbitration, TCS broadly seeks to compel arbitration as to all of Plaintiffs' claims. *See* Def.'s Mem. In Supp. p. 13. [Doc. No. 42].

A party seeking to compel arbitration, in this case TCS, must demonstrate that a valid agreement to arbitrate exists and that the other party is bound by the clause.  *See Dialysis Access Center, LLC v. RMS Lifeline, Inc*., 638 F.3d, 357, 375-376 (1st Cir. 2011).   TCS cannot meet this burden here.   With respect to Plaintiffs Cadigan, Albright and the NFB, Defendant has not even claimed that a valid agreement to arbitrate their claims exists.   Accordingly, the claims of these Plaintiffs and the nationwide class and subclasses they seek to represent, cannot be compelled to arbitration and/or unfairly extinguished.

---

[2] TCS has not moved to compel the claims of Plaintiffs Mark Cadigan and Heather Albright to arbitration, presumably because neither Cadigan nor Albright are members of TCS' Loyalty Program. *See* Pl. Mark Cadigan's Responses to Def. the Container Store Group, Inc.'s Interrogatories to Pl. Mark Cadigan (Set One) and Pl. Heather Albright's Responses to Def. the Container Store Group, Inc.'s Interrogatories to Pl. Heather Albright (Set One) attached collectively as Ex. E.

As to the remaining Plaintiffs, Plaintiff Pyyhkala, Irving and Jacobs each enrolled in the Loyalty Program at Defendant's retail stores. Each of the Plaintiffs confirmed in discovery responses provided to TCS that, in no uncertain terms, they were not presented with, and did not agree to, arbitration at any time relevant to the Complaint. *See* Ex. A, B, and C.  As explained in the Plaintiffs' Complaint, the Plaintiffs were unable to independently enroll in the Loyalty Program because the flat-screen devices employed by TCS for that purpose are not accessible to the blind.  With respect to Plaintiff Lineback, TCS argues that as a condition of enrollment Lineback had to affirmatively agree to the terms and conditions of the Loyalty Program on the TCS website.  *See* Manson Decl.  ¶ 6. [Doc. No. 42.1].  Yet TCS has provided no proof that Plaintiff Lineback actually did check a box agreeing to submit her claims to arbitration, and has provided no proof that the terms and conditions she allegedly agreed to were provided to her in an accessible format, although it is their burden to do so.  Lineback, who is legally blind, has stated that she does not recall being presented with any agreement to arbitrate in an accessible manner.  *See* Ex. D.

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.  *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582 (1960).  TCS argues that there is no way to enroll in the Loyalty Program without agreeing to the arbitration and class action waiver provisions.  However, the Plaintiffs' interrogatory responses make clear that they were unable to independently enroll in the Loyalty Program and input the required information.  *See* Ex. A, B, and C.  From the Plaintiffs' discovery responses alone, it is clear that to the extent any information was input into the inaccessible flat-screen devices to complete "enrollment" in the Loyalty Program, such actions were taken by

7

TCS cashiers that entered the relevant information into the inaccessible devices. *See* Ex. A, B, and C.

A party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate some claims. *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994). Here, TCS fails to provide any evidence to demonstrate that the Plaintiffs assented to the Loyalty Program's Terms and Conditions because the Plaintiffs failed to provide any evidence to demonstrate that the terms and conditions were read to Plaintiffs, or otherwise presented to them in an accessible manner. In its brief, TCS argues that "the cashier was available to read the terms and conditions" to Plaintiffs. However, TCS does not claim that any cashier did in fact read the terms and conditions to Plaintiffs and obtain their consent to those terms. That a cashier is able to read terms and conditions out loud does not demonstrate that the terms were in fact read and agreed upon. Accordingly, TCS' Motion must fail. *See Granite Rock Co. v. International Brotherhood of Teamsters,* 561 U.S. 287, 297 (2010) (a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate the dispute).

Moreover, despite the federal policy favoring arbitration, whether an agreement exists to arbitrate is a matter of state law. *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2001); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 19 (1st Cir. 1999). For a valid arbitration agreement to exist under Massachusetts[3] law, a court must determine that a written agreement exists, that the disputed question falls within the scope of the agreement, and the party seeking arbitration has not waived its right to arbitration. *Bowlby v. Carter Manufac.*

---

[3] Although the Loyalty Program terms and conditions provide Texas law should govern its interpretation, that state law is only applicable if the parties are bound by the terms and conditions. The Plaintiffs rely on Massachusetts contract and arbitration law to govern this dispute because it is the forum state. *See generally Walker v. Collyer*, 85 Mass. App. Ct. 311, (2014).

*Corp.*, 138 F. Supp. 2d 182, 186-7 (D. Mass. 2001).  Once a court finds that the parties have

agreed to arbitrate a claim, it is at that point in the analysis that the federal presumption in favor

of arbitration comes into play, but not before first finding that the parties have agreed.  *Id.* at 187.

Here, the federal presumption in favor of arbitration should not come into play because the

evidence does not unambiguously demonstrate that the parties agreed to arbitrate a claim.

  The cases upon which Defendants rely that discuss assent to clickwrap agreements or

other electronic acceptance tools, have no relevance here.  In this case, TCS has failed to

demonstrate that Plaintiffs themselves clicked anything at all – or that the terms and conditions

themselves were even available in an accessible format that would have enabled the Plaintiffs to

know what they were being asked to agree to.  *See Ajemian v. Yahoo*, 83 Mass. App. Ct. 565,

575-576 (2013) (arbitration denied where the record failed to demonstrate that the terms were

displayed in whole or in part, or that the terms were reasonably communicated or accepted).

This Court has previously explained that a "money now, terms later" contract cannot be enforced

unless reference to the binding terms is explicitly made, and evidence is presented that

demonstrates affirmative assent to those terms.  *See Schacter v. Circuit City Stores, Inc.*, 433 F.

Supp. 2d 140 (2006).  Here, TCS has wholly failed to provide explicit reference to the terms in

the Loyalty Program agreement which purport to waive each Plaintiff's right to bring

representative actions and require arbitration, and Plaintiffs certainly never assented to those

terms. Because of TCS' failure to provide accessible POS Devices, Plaintiffs could not have

assented to the Loyalty Program Terms and Conditions because Plaintiffs never saw or otherwise

comprehended that any such terms and conditions existed.

**B.      DEFENDANT CANNOT EFFECT A WAIVER OF PLAINTIFFS' CLASS-WIDE DISCRIMINATION CLAIMS BASED ON THE NOTICE IT CLAIMS WAS PROVIDED**

### 1.      A Heightened Level of Scrutiny Is Required When Considering the Dismissal of Discrimination Claims

The First Circuit has held that it is inappropriate to enforce agreements to arbitrate ADA claims where, under the totality of the circumstances, the company seeking to enforce the arbitration agreement has not provided appropriate notice that would be sufficient to apprise the individuals sought to be bound by the arbitration clause. *See Campbell v. Gen. Dynamics Gov't. Sys. Corp.*, 407 F.3d 546, 555 (1st Cir. 2005).

Because the ADA itself recognizes that arbitration is only permitted where doing so would be "appropriate," the Court held that an objective standard should be applied to determine whether the company claiming a right to arbitration had "provided a reasonably prudent [individual] notice of the waiver." *Id*. at 555. The standard is an objective one that involves the consideration of numerous factors, including the method of communication, the context, and the content of the communication.  *Id*.

In *Campbell*, the Court held that a workplace email that was intended to announce a policy requiring all employees to arbitrate any employment-related claims was ineffective for a host of reasons, including: (i) that email was often used for intra-office communication, but was not a traditional means of conveying contractually binding terms or effecting waivers; (ii) the email communication (though it enclosed important documents and advised recipients to review the enclosed material carefully,) itself downplayed the significance of the attached material and failed to highlight that it contained a mandatory arbitration provision; and (iii) a reasonable employee would have had no reason to know, based on prior experience, that an employee handbook referred to in the communication would contain legally binding terms. *Id*. at 556-559.

10

Here, TCS' purported method of communicating "notice" was far more deficient than the notice provided in *Campbell*. TCS' chosen method of communication was to provide a five-page document, filled with legalese and including significant purportedly binding legal waivers on the next to last page, to its customers via a visual "display" to be read and presumably accepted while customers stand on a check-out line waiting to make a purchase. *See* Manson Decl., at ¶ 2 [Doc. No. 42.1].

For blind customers, including Plaintiffs, any purported visual display of the Terms and Conditions using TCS' inaccessible POS Devices and tablets alone would be completely useless. Thus, under the *Campbell* standard, TCS' method of communication fails because it was not appropriate for the blind customers in this case. In addition, the context of the communication – the terms of a Loyalty Program providing discounts and perks to customers – does nothing to signal to a customer that important binding legal terms would be contained therein. *Campbell*, 407 F.3d at 555. Finally, the content of the communication itself (if it is ever read) is misleading. The entire document pertains to the Loyalty Program and the discounts and membership perks that are offered – until a reader gets to the Dispute Resolution section, buried on page four (4) where, suddenly, all disputes (even those having nothing to do with the Loyalty Program itself) are purportedly subject to arbitration and the ability to proceed in a representative capacity is flatly proscribed. *See* Ex. A to Manson Decl. [Doc. No. 42.2].

In *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, the First Circuit refused to send Title VII claims to arbitration where notice was considered insufficient under the circumstances. 170 F.3d 1, 19-21 (1st Cir. 1999). As in *Campbell*, the Court in *Rosenberg* held that waiver of the right to proceed in court on civil rights claims required a higher level of scrutiny given the federal statutory rights at issue. *Rosenberg,* 170 F.3d at 21. Indeed, with

respect to state law discrimination claims, the Massachusetts Supreme Judicial Court ("SJC") has required an even higher level of scrutiny before an individual will be deemed to have agreed to arbitrate or otherwise limit or waive his or her legal rights and remedies. *See Warfield v. Beth Israel Deaconess Medical Center, Inc.*, 454 Mass. 390, 398 (2009). The SJC found in *Warfield* that an agreement to arbitrate employment discrimination claims would only be enforceable if the agreement were stated in "clear and unmistakable terms." *Id.*

This Commonwealth's interest in ensuring that legally blind individuals are able to obtain equivalent access to the goods and services provided by public accommodations operating in Massachusetts is just as compelling as the its interest in protecting employees seeking to pursue workplace discrimination claims. The state discrimination laws of Texas and New York also reflect the public policy of those states and their strong interest in ensuring that public accommodations operating within their borders provide equivalent access to their blind or otherwise disabled residents. Texas law prohibits discrimination in places of public accommodation and entitles individuals who are visually or hearing impaired, or individuals with a disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of public facilities. *See* Tex. Hum. Res. Code Ann. § 121.003. The New York legislature has also enacted comprehensive civil rights laws prohibiting discrimination in the state of New York on the basis of disability. New York laws prohibit the violation of a person's civil rights and the direct or indirect refusal, withholding from, or denial of any of the accommodations, advantages, facilities or privileges of a place of public accommodation. *See* N.Y. Civil Rights Law § 40-c(2), and N.Y. Exec. Laws. § 296(2)(a). The notice provided by TCS here was not appropriate under the circumstances to effectuate a waiver of the significant federal

12

and state discrimination laws that Plaintiffs seek to require TCS to uphold, and TCS' Motion should therefore be denied.

### 2.      Even Under Normal Scrutiny, Notice Here Was Grossly Inadequate

The notice that TCS purports to have provided to its blind customers in this case is woefully inadequate. Arbitration under the FAA "is a matter of consent, not coercion." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Whether a contract based on a consent to arbitrate was formed is a question of Massachusetts state law. *See Acher v. Fujitsu Network Comms., Inc.*, 354 F. Supp. 2d 26, 36 (D. Mass. 2004).

Under Massachusetts law, a valid contract requires offer, acceptance and consideration. *Id.* Here, there is no signed agreement indicating acceptance. However, as the Court explained *in Acher*, under some circumstances, where no actual agreement to arbitrate is signed, acceptance may be presumed based on a combination of actions and knowledge that signify consent. For example, in the employment context, "continuing to work *with the knowledge* that a dispute resolution policy is a mandatory condition of continued employment can constitute acceptance." *Id.* (emphasis in original). In such rare cases, the burden of proof is on the employer to demonstrate that knowledge of important binding provisions is conveyed in some meaningful manner to the affected employees. *Id.* The employer must submit evidence demonstrating "that its employees *were notified* that the [relevant policy] was posted on its intranet website," or evidence "which would establish that employees *had been informed* that they were charged with knowledge of policies contained on the intranet's website." *Id.* at 37 (emphasis added). Without such evidence, no agreement can be presumed. *Id.* at 37. Here, TCS has presented *no* evidence that the Plaintiffs were informed in any appropriate way that they

were being asked to give up meaningful legal rights. What the Plaintiffs understood and were told is that they had to give up their email address or phone number to get member discounts and perks. *See* Ex. A, B, C and D. TCS' Motion disregards the fact that providing "notice" to a blind customer on an inaccessible flat-screen device is just as effective as yelling in the ear of a deaf man. In other words, it was no notice at all. As a result, TCS' Motion should be denied.

### C.    THE ARBITRATION CLAUSE IS UNENFORCEABLE BECAUSE IT IS ILLUSORY

Even in the aftermath of the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion,* the enforceability of an arbitration provision is still subject to basic contract defenses that may be used to invalidate such a provision. 131 S. Ct. 1740, 1746 (2011). As such, federal courts apply state law to determine whether contract defenses may invalidate arbitration agreements. *Dominichetti v. The Salter School, LLC*, No. 12-11311-FDS, 2013 U.S. Dist. LEXIS 57201, at *12 (D. Mass. 2013).

Here, even if TCS could show that the Plaintiffs agreed to the Loyalty Program Terms and Conditions, which it cannot, TCS' Motion should still be denied because the arbitration clause at issue is illusory. "[C]ourts have found the obligation to arbitrate unenforceable when the [company claiming arbitration] retains the unilateral right to change the terms of the agreement because such a right renders any recited promise illusory. *Id.* (collecting cases). In *Dominichetti*, the Court refused to compel arbitration where the employer's dispute resolution policy gave the employer an unfettered right to modify the policy. "Defendants thus had the power to require plaintiff to arbitrate the covered dispute, while simultaneously reserving the right to modify the agreement. Such an agreement is not enforceable." *Id.* at *18. Similarly here, TCS' Loyalty Program Terms and Conditions provide: "We reserve the right, at our discretion, to change,

14

modify, cancel, add or remove any or all portions of these terms, any policy, FAQ, or guideline

pertaining to the POP! Program at any time." Ex. A to Manson Decl. at p. 4 ¶ 5 [Doc No. 42.2].

The provision provides that any changes or modification to the policy would be posted online

and provides that consumers waive "any right you have to receive special notice of such

change." *Id.*  Because TCS purports to reserve an unfettered right to change its policies at any

time and without notice to those directly affected by such change, the arbitration agreement is

illusory and cannot be enforced.

### D.   THE ARBITRATION CLAUSE CANNOT BE ENFORCED BECAUSE IT IS UNCONSCIONABLE

Like other contracts, an arbitration provision is invalid if it is unconscionable under state

law unconscionability standards.  *See Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 59 (1st

Cir. 2007).  Under Massachusetts law, the "determination that a contract or term is or is not

unconscionable is made in the light of its setting, purpose and effect."  *Miller v. Cotter*, 448

Mass. 671, 679 (2007).  *Miller* emphasized that the determination must be made on a case by

case basis "giving particular attention to whether, *at the time of the execution of the agreement*,

the contract provision could result in unfair surprise and was oppressive to the allegedly

disadvantaged party." *Id.* at 680, 545 (emphasis in original).

In *Skirchak*, the First Circuit applied this Massachusetts law standard to invalidate a class

action waiver in an employment case. The Court explained that the waiver was unconscionable

based on a variety of factors, including: (i) that the content, obscurity and timing of the email did

nothing to highlight the importance of its contents; and (ii) the class waiver provision was hidden

in two paragraphs in a multi-page appendix.  508 F.3d at 59-61.   Significantly, the Court noted

that "where waiver of statutory rights is at issue, Massachusetts generally requires that the

waiver be both knowing and voluntary. In our view, this statutorily created interest in class actions, even assuming it is waivable, was sufficiently strong that Massachusetts law would, on these facts, find the waiver would result in oppression and unfair surprise to the disadvantaged party. The waiver was not due to mere allocation of risk because of [the employer's] superior bargaining power." *Id.* at 59-60 (citations omitted).

Here, the significance of the discrimination laws at issue in the Complaint also weigh in favor of a finding of unconscionability. Furthermore, as previously explained, there was no knowing and voluntary waiver – there was no notice to Plaintiffs at all, let alone appropriate notice, that important legal rights would be waived by joining TCS' Loyalty Program. Substantive unconscionability arises when the terms of a provision are "not substantively reasonable." *Whirlpool Corp. v. Grigoleit Co.*, No. 1:06-cv-0195, 2011 US. Dist. WL 3879486, at *3 (W.D. Mich. Aug. 31, 2011), *aff'd* in part, 713 F.3d 316 (6th Cir. 2013). Here, the arbitration provision itself is unconscionable because it requires Plaintiffs to waive their rights to legal remedies otherwise available to them and because it imposes outrageous costs on Plaintiffs by requiring them to arbitrate their claims exclusively in Dallas, Texas, and to pay attorney's fees and costs incurred by TCS if TCS is the prevailing party. Ex. A to Manson Decl. at p. 3-4 [Doc. No. 42.2]. Indeed, the Terms and Conditions go so far as to purport to release TCS and its officers, directors, employees and agents "from any and all claims, damages, losses, liabilities and other expenses relating to the POP ! Program or the terms and conditions." *Id.* at 3-4. The Terms and Conditions limit TCS' liability for "any indirect, special, incidental, punitive or consequential damages". *Id.* at 4. The Terms and Conditions also purport to prevent signatories from bringing any class action or private attorney general action against TCS. *Id.*

16

TCS' Loyalty Program Terms and Conditions are far from equitable and are unduly oppressive.  Unlike AT&T's arbitration clause that was upheld by the Supreme Court in *Concepcion*, *supra*, TCS' arbitration clause does not: (i) allow consumers to initiate arbitrations online; (ii) offer to pay any costs of arbitration; (iii) offer to proceed with arbitration in a convenient forum; (iv) allow arbitration by phone, in person or on the papers; (v) allow consumers to bring a small claims suit; (vi) permit arbitrators to award punitive damages; (vii) disclaim the right to seek its attorney's fees; (viii) offer to pay a premium in the event the award exceeds the Defendant's last settlement offer; or (ix) offer to reimburse consumers for their attorneys' fees. 131 S. Ct. 1740, 1753 (2011). Accordingly, TCS' Motion to enforce these Terms and Conditions should be denied because such Terms and Conditions are plainly unconscionable.

### E.    PLAINTIFFS' CLAIMS DO NOT ARISE FROM THE LOYALTY PROGRAM RULES

TCS' Motion also fails because TCS cannot compel arbitration on claims that do not arise from the Loyalty Program rules.  The Plaintiffs' Complaint states:

> Defendant has discriminated against Plaintiffs and the Nationwide Class in that it has **failed to make its POS Devices** and Loyalty Program **fully accessible to individuals who are blind or visually impaired** in violation of 42 U.S.C. §§ 12101, 12102(2) and 28 C.F.R. §§ 36.101 *et seq*. Providing the auxiliary aids and services mandated by the ADA would neither fundamentally alter the nature of Defendant's businesses nor result in an undue burden to Defendant.

NFB Compl. at ¶ 96. [Doc. No. 1] (emphasis added).

TCS' Motion entirely ignores the allegations pertaining to the inaccessibility of TCS' POS Devices, which are wholly unrelated to any issues involving the Loyalty Program.  It is well settled that Courts do not require arbitration of claims that arise independently of the contract. *See AT & T Technologies Inc., v. Comm'n Workers of Am*., 475 U.S. 643, 648 (1986). Even broad language in an arbitration agreement does not make disputes unrelated to the contract

arbitrable.  Here, TCS seeks to use a contract that is entitled "POP ! Perfectly Organized Perks

Terms & Conditions" to dismiss claims that relate to the inaccessibility of TCS' POS Devices,

which are completely unrelated to the Loyalty Program.  *See* Ex. A to Manson Decl. ¶1 [Doc.

No. 42.2].  Indeed, nothing in the Loyalty Program Terms and Conditions relates to matters

outside of the Loyalty Program itself, except for the incredibly broad language in the Dispute

Resolution provision which purports to cover "any dispute" with the Container Store. *See* Ex. A

to Manson Decl. [Doc. No. 42.2].  Put simply, because Plaintiffs' claims related to the

inaccessibility of TCS' POS Devices have nothing to do with the Loyalty Program, they are not

subject to arbitration under the Loyalty Program Terms and Conditions.  In addition, insofar as

Plaintiffs' claims include allegations that the enrollment process for the Loyalty Program itself is

not accessible to the blind, dismissal of Plaintiffs' tort and statutory damage claims are also not

required by the arbitration provision.  The Hornbook "test for whether a tort claim 'relates to' a

contract depends on whether the claim could be maintained without reference to the contract." 21

WILLISTON ON CONTRACTS § 57:31 (4th ed.).   Here, it cannot be disputed that all of

Plaintiffs' claims could be maintained without reference to the Loyalty Program Terms and

Conditions whatsoever.

The Court's opinion in *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253

(S.D Cal. 2012) is instructive on this issue.  In that case, the arbitration agreement at issue

appeared on an invoice for an oil change that was allegedly signed by a plaintiff when he visited

one of the defendant's stores.  The district court denied the defendant's motion to compel

arbitration, reasoning that the language of the arbitration agreement was "incredibly broad"

because "[i]t purports to apply to 'any and all disputes' between [the parties], and is not limited

to disputes arising from or related to the transgression at issue." *Id*. at 1262.  The court concluded

18

that "a suit . . . arising from a completely separate incident could not be forced into arbitration – such a clause would clearly be unconscionable." *Id*. at 1263.  In this case, TCS' dispute resolution provision is far broader than the text of any other provision in the Loyalty Program rules. *See* Ex. A to Manson Decl. ¶ 3 [Doc. No. 42.2].  It purports to bind customers to arbitrate *any* dispute with the store, not just a dispute relating to the Loyalty Program.  *Id.*  Applying such an unreasonably broad waiver to dismiss Plaintiffs' claims in this case is similarly unconscionable and should be denied.

### F.    TCS' MOTION FOR A STAY SHOULD BE DENIED

Because Defendant's Motion should not be sustained, a stay is not appropriate here.  In any event, a stay is not appropriate because TCS has failed entirely to challenge the claims brought by (i) the institutional Plaintiff, National Federation of the Blind, and (ii) two of the named Plaintiffs (Mark Cadigan and Heather Albright) and the nationwide class and subclasses they seek to represent.  Because these claims are indisputably *not* subject to arbitration and class action waiver, regardless of the outcome of TCS' Motion, this case should proceed for these plaintiffs forthwith and without further delay.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order denying the Defendant's Motion to Enforce Arbitration and Class Action Waivers and Stay Action.

Respectfully submitted this 24th day of February, 2016.

*s/ Jeremy Weltman*
Jeremy Weltman, 662293
KERSTEIN, COREN &
LICHTENSTEIN LLP

60 Walnut Street, 4th Floor
Wellesley, MA 02481
Tel: 781.997.1600
Fax: 781.997.1633

jweltman@kcl-law.com

Jana Eisinger (pro hac vice)
MARTINEZ LAW GROUP, P.C.
720 South Colorado Boulevard
South Tower, Suite 1020
Denver, CO 80246
303.597.4000
eisinger@mlgrouppc.com
*s/ Scott LaBarre*
Scott C. LaBarre (pro hac vice)
LABARRE LAW OFFICES, P.C.
1660 South Albion Street, Suite 918

Denver, CO 80222
303.504.5979
slabarre@labarrelaw.com

Timothy Elder (pro hac vice)
TRE LEGAL PRACTICE, LLC
4226 Castanos Street
Fremont, CA 94536
410.415.3493
telder@trelegal.com

Attorneys for Plaintiffs and all Other
Individuals Similarly Situated

## CERTIFICATE OF SERVICE

I, Jeremy Y. Weltman, certify that on this 24th day of February, 2016, I caused a
true copy of the foregoing *Plaintiff National Federation of the Blind's Memorandum of
Law in Opposition to Defendant's Motion to Enforce Arbitration and Class Action
Waivers and Stay Action* to be filed with the Clerk of the United States District Court for
the District of Massachusetts through the Court's Electronic Case Filing system ("ECF")
and to be served through ECF upon counsel of record, with paper copies sent to any
person indicated on ECF as a non-registered participant:

Gregory F. Hurley, Esq.
Michael J. Chilleen, Esq.
Sheppard Mullin Richter & Hampton
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
ghurley@sheppardmullin.com
mchilleen@sheppardmullin.com

Howard E. Stempler, Esq.
Seder & Chandler LLP
339 Main Street, Suite 300
Worcester, Massachusetts 01608
hstempler@sederlaw.com

/s/ *Jeremy Y. Weltman*
Counsel for Plaintiffs