**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

NATIONAL FEDERATION OF THE BLIND, on behalf of their members and itself, MARK CADIGAN, MIKA PYYHKALA, LISA IRVING, ARTHUR JACOBS, JEANINE KAY LINEBACK, and HEATHER ALBRIGHT, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

THE CONTAINER STORE, INC.

Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**C.A. No. 1:15-cv-12984-NMG**

---

**LEAVE TO FILE GRANTED ON JULY 28, 2016**

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEPOSITION ATTENDANCE AND PRODUCTION OF DOCUMENTS**

---

# **TABLE OF CONTENTS**

INTRODUCTION ..................………………………………………………………………….…..1

ARGUMENT ...………………………………………………………………………………….4

    I.    Plaintiffs Conferred in Good Faith, and Defendants Should Be Sanctioned for Their Production Failures ……… ..................................................................……4

        A.    Defendants Are Abusing the Meet and Confer Process to Delay Discovery……… ..................................................……………………………5

        B.    Plaintiffs Have Identified the Following Responses by TCS as Deficient ………..................................................……………………………….6

        C.    Defendant's Assertion That It Has Complied With ESI Discovery, But Plaintiffs Are Refusing to Cooperate, is Blatantly False …………………..10

        D.    Defendant's Case Law is Readily Distinguishable …..……………….....11

    II.    Defendant Does Not Have the Authority to Unilaterally Determine the Parameters of Discovery………..................................................………………12

    III.    The 30(b)(6) Deposition Notice………..................................................………………13

    IV.    It is Wholly Inappropriate to Make a New Substantive Argument Regarding Standing in a Reply Brief to a Motion to Compel Discovery…………………….16

    V.    Conclusion……… ..................................................………………17

## INTRODUCTION

Plaintiffs National Federation of the Blind ("NFB"), Mark Cadigan, Mika Pyyhkala, Lisa Irving, Arthur Jacobs, Jeanine Kay Lineback, and Heather Albright (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated hereby submit the following Reply to Defendant, The Container Store, Inc.'s ("TCS") Opposition to Plaintiffs' Motion to Compel Document Production and Deposition Attendance. Defendant offers nothing in its opposition that limits Plaintiffs' right to any of the documents sought in its Document Production Requests. Plaintiffs have diligently propounded requests for production of documents and interrogatories on Defendants. This valid discovery remains largely unanswered. Due to Defendant's repeated efforts to delay discovery, Plaintiffs have only begun to obtain selective pieces of the information to which they are entitled by virtue of the discovery rules.

Defendant is using the "meet and confer" requirement as a tool for delay and evasion of legitimate discovery requests. First, they refused to provide a written response to Plaintiffs' June 3, 2016 meet and confer letter, despite Plaintiffs' specific request that TCS do so in order to hone the topics to be discussed during the meet and confer call. *See* Ex. 3 to Pls.' Mot. To Compel. This letter asked for documents that were originally requested in <u>November 2015</u>. *Id*.

Although Plaintiffs acquiesced to Defendant's request to discuss TCS's production on June 16, 2016, almost a week after it had asked TCS to produce the documents it had wrongly withheld, Plaintiffs made a point of requesting that Defendant first respond to the letter in writing, to enable Plaintiffs to understand the basis for TCS's failure to produce relevant documents, to ensure that the call could be productive. *Id.* at Ex. 4. (Friday, June 10, 2016 email from Jana Eisinger to Michael Chilleen "Send us a response in writing – so that we can see what is left to discuss"; Monday, June 13, 2016 email from Jana Eisinger to Michael Chilleen "In

1

advance of [the Thursday, June 16th] call, please respond to our deficiency letter and let us know what you will agree to produce if anything, and when it will be produced. Without a written response, it will be very difficult for us to narrow the issues set forth in the deficiency letter."; and Tuesday, June 21st email from Jana Eisinger to Michael Chilleen "Please provide a specific written response to the issues we raised in our meet and confer letter so we know what you are now agreeing to respond to and what remains that we don't agree on."). TCS failed to provide any written response. In fact, TCS never even responded to Plaintiffs' repeated request for a written response. Id. at Ex. 4. As such, because TCS had not engaged in any legitimate upfront due diligence prior to the phone meet and confer, the discussion on June 16th proved circular and served only as a means by which TCS could further delay the discovery process.

TCS was completely unprepared for the June 16th call. On the call, counsel Michael Chilleen admitted that TCS had not conducted a full search for electronic documents, admitted that Chilleen did not know the custodian of ESI materials or how any document search had been conducted, and contended that he needed time to call TCS before he could shed any light on the production deficiencies. That 'client call' should have been made more than nine months ago - when the requests were first issued back in November 2015. There was no excuse for counsel to have failed to confer with his client prior to responding to discovery. And most certainly that call should have occurred when Defendant received Plaintiffs' meet and confer letter on June 3, 2016. TCS's counsel has deliberately delayed the meet and confer process and has obstructed Plaintiffs' diligent effort to obtain even the most basic information that is necessary for the successful prosecution of this case. This continued attempt to refuse to fully and diligently comply with legitimate discovery requests, by failing to properly respond to discovery requests

and then using the meet and confer process as a further delay, is a clear obstruction of the discovery process, and requires this Court's intervention to put it to an end.

With regard to Plaintiffs' motion to compel the 30(b)(6) witness or witnesses, Defendant has presented the court with a self-serving, one-sided rendition of the facts, in a thinly-veiled attempt to discredit Plaintiffs' counsel. Defendant knows that when Plaintiffs' counsel Jana Eisinger participated in the June 3rd meet and confer call, she first learned that Joan Manson was the 30(b)(6) deponent that TCS intended to produce. TCS had responded to Plaintiffs' deposition notice with an explicit refusal to produce any witness. In an email chain having to do with Ms. Manson's separately-noticed deposition, defense counsel contradicted their discovery response and stated that Ms. Manson would be TCS's 30(b)(6) deponent. Because this email was sent during a discussion regarding a deposition that was already being scheduled, Plaintiffs' counsel overlooked Defendant's reference to Ms. Manson as their 30(b)(6) deponent. In any event, because Plaintiffs' counsel agreed to adjourn Ms. Manson's deposition, and it is now clear that Defendant intends to produce her as a 30(b)(6) deponent, Plaintiffs withdraw their request for sanctions due to TCS's initial refusal to produce any witness.

In its response papers, Defendant misguidedly attempts to adjudicate issues of standing with respect to class certification, under the guise of an opposition to a motion to compel. Defendant has never sought to bifurcate discovery on class certification issues, has not argued that Plaintiffs' requests are burdensome, and has filed no motion seeking to limit the scope of discovery in any fashion. Defendant's attempt to withhold relevant discovery and asserting an objection to class-based discovery in opposition to Plaintiffs' motion to compel is both premature and procedurally defective. These issues are to be determined by application of Fed.

R. Civ. P. 23 and are issues for the class certification stage, after the relevant discovery has been produced.

For these reasons, as more fully explained below, Plaintiffs' motion to compel should be granted.

## ARGUMENT

I.  **Plaintiffs Conferred In Good Faith, And Defendants Should Be Sanctioned For Their Production Failures**

Defendant completely mischaracterizes the record, in contending that Plaintiffs filed their motion without meeting and conferring in good faith. Plaintiffs engaged in both written and telephonic communication with TCS in an attempt to discuss each and every deficiency that Plaintiffs had identified in TCS's discovery responses. TCS failed to respond to Plaintiffs' deficiency letter in writing, and viewed the meet and confer as the beginning of discovery – *i.e.* TCS apparently believed there was no obligation on the part of TCS to conduct any ESI production, or identify custodians of documents, until after the deadline to produce had already passed. The meet and confer process does not require that Plaintiffs surrender their legitimate position on their right to discovery and document production.

Moreover, after the meet and confer call, when TCS's counsel sent a curt email simply stating that TCS would produce additional documents, TCS then failed to respond when Plaintiffs' counsel asked what discovery responses they were now willing to supplement and what documents were to be searched. *See* Ex. 4 to Pls.'s Mot. To Compel (Tuesday, June 21, 2016 email from Jana Eisinger to Michael Chilleen "We will be happy to provide search terms once you let us know what you are searching for and from whom. We would like that written response promptly as it has been weeks since we asked for supplementation. Can you get it to us early next week so we can then discuss search terms and any outstanding terms? We will need to

4

discuss format for production as well."). TCS's repeated and blatant failure to respond in good faith to Plaintiffs' legitimate requests for discovery and TCS's counsel's refusal to provide the basic information required to narrow any legitimate discovery dispute, warrants the sanctions that Plaintiffs have requested.

### A.     Defendants Are Abusing the Meet and Confer Process To Delay Discovery

TCS's steadfast refusal to provide a clear, written response to the meet and confer letter, and their lack of preparation on the June 3rd call speaks volumes about their motivation – they intend to use the meet and confer as yet another delay tactic. "When abused, 'meet and confer' requirements can serve as handy tools for delay and evasion. The process can be deliberately drawn out, wearing down opponents and killing legitimate discovery with a kind of death by a thousand cuts." *Death, By Meet and Confer*, Edward P. Sangster, California Litigation, Vol 17, Num. 1 – 2004.

> For counsel adopting such a tactic, the meet and confer process becomes a form of filibuster during which an opponent's strategy can be extracted as the price for cooperating with even the most obvious discovery. For these counsel, the meet and confer process rarely concludes with a definitive position. **They always need additional time to ponder the points raised, so that they can defend a motion by asserting that the meet and confer process had not been completed.** Alternatively, they repeatedly claim to be unavailable or impose ridiculous conditions to delay the conference, and then oppose the motion on the basis of the inadequate meet and confer process. *See, e.g. Berry v. Baca*, 2002 WL 1777412 (C.D. Cal. 2002); *Hart v. Gaioni*, 2003 WL 21149935 (C.D. Cal. 2003).

*Id.* (emphasis added).

In the Opposition Brief, defense counsel made much of the fact that he "needed more time" to respond to the meet and confer requests and to confer with his client. Def.'s Opp. Br. at 2 ("Defense counsel estimated that it would take a few weeks to get responsive documents, especially when considering the upcoming July 4 holiday when people may not be available.")

This contention is false because: (1) the July 4th holiday that counsel contended necessitated additional time was actually occurring over a month after counsel had received the meet and confer letter; (2) the deficient requests addressed in the meet and confer letter were not new requests and counsel was ethically obligated to speak with TCS prior to the June call, given that this discovery was long overdue already; and (3) ESI searches should have already occurred. And, true to the abusive tactic discussed in the above-referenced article, TCS is attempting to distract the Court from its own failure to timely and fully comply with its discovery obligations, by wrongfully claiming that Plaintiffs' counsel failed to meet and confer.

### B. Plaintiffs Have Identified The Following Responses By TCS As Deficient

Because TCS has failed to provide any detailed response to Plaintiffs' deficiency letter, its so-called supplementation has been minimal, and TCS has failed to specify what supplementation it is now willing to make or has made, it is absurd for TCS to claim that its production is now complete. Although Defendant states that "Defendant has already supplemented its discovery responses and made a supplemental document production," the supplemental production that TCS has made was minimal and did little to bring it into discovery compliance. Moreover, TCS has still failed to identify what responses it now claims to have supplemented and what documents it is still refusing to produce.

- **Privileged Documents**

Plaintiffs know that certain documents are being withheld for privilege. The objections to all twenty-four of Plaintiffs' Requests for Production state privilege as a basis for withholding documents. *See* Pls.'s Reply to Def.'s Opp. Br. at Ex. A, Def.'s Responses to Pls.'s Pared Down First Request for Production of Docs (which includes Plaintiffs' initial requests). Counsel for TCS admitted on the June 3rd call that there are emails and other documents between counsel and

Joan Manson. However, TCS has still failed to produce either those documents or a privilege log. *See* Def's Opp at 14 (indicating there are no responsive documents to Requests 8, 21, and 22 which involve consultation with attorneys and other consultants over ADA compliance).

- **Documents Withheld Based on Standing and Class Discovery**

Defendant has refused to produce documents based on TCS's erroneous position that Plaintiffs lack standing and/or are not entitled to class discovery. *See* Def's Opp at 14-16 (indicating that it is not responding to Request Nos. 4, 5, 17, 18, 19 and 20 based on their belief that Plaintiffs lack standing and/or are not entitled to class discovery).

- **Documents Withheld Based on a Failure to Conduct an ESI Search**

TCS never conducted an appropriate search for electronic documents and its production of documents responsive to all 24 Requests is therefore deficient. *See* Def's Opp. at 15 (indicating that it has not conducted an ESI search).

- **Requests to Which TCS Produced No Documents**

Defendant originally produced no documents at all in response to Request Nos. 1, 4, 5, 11 and 24. *See* Pls.'s Reply to Def.'s Opp. Br. at Ex. A. On July 26, 2016, after their opposition had already been filed, Defendant revised that response to state that it had already produced documents for Requests 1, 11 and 24 and that it had produced certain documents for 4 and 5, but was limiting the production based on class discovery/standing issues. *See id*. at Ex. B, Def.'s Supplemental Responses to Pls.'s Pared Down First Request for Doc., dated July 20, 2016 and received in the mail on July 26, 2016 (supplemental response was not sent via email). Defendant may not limit Requests 4 and 5 to only certain stores and certain years. In addition, Plaintiffs believe there are more documents responsive to Request 1, which sought "All documents concerning Your attempt to replace or upgrade the touchscreen POS Devices at issue

7

in this Action." Nowhere in Defendant's production are any documents or ESI generated by Joan Manson, or any other supervisor/manager, regarding replacement of the POS Devices at issue in this case. Also missing are any ESI or documents regarding the analysis or choice of possible replacement POS devices, or remedies to address the accessibility issues with the Devices. TCS is a very large company with numerous locations and any replacement of Devices for each store would have necessitated some communication.

- **Requests to Which TCS Contends No Documents Exist**

TCS originally contended that there were no documents responsive to Requests Nos. 8, 13, 21, 22, and 23 and that 14 is moot. *See id.* at Ex. A. On July 26, 2016, Defendant revised that response to state that it produced invoices pursuant to Request 21, maintained that there were no responsive documents for Requests 8, 13, 22, and 23 and that documents to Request No. 14 had already been produced. *See id*. at Ex. B.

Request No. 8 sought "All documents concerning any consultant or any other adviser You retained to advise You on the development or purchase of the so-called accessibility overlays." Because TCS's counsel has stated that it was advising TCS regarding the so-called accessibility overlays, a privilege log must be produced identifying those communications.

Similarly, Request No. 23 sought "All documents concerning the decision to permit customers to independently register for the Pop! Program at Your retail locations." And yet, other than photographs of the new laptops being installed to assist with registration for the Pop! Program, there were no internal communications produced that discussed why these laptops were installed for the Pop! Program, what motivated such an expensive change, no discussions with a consultant or law firm about implementing such change, or even discussion among the

management staff about how to pay for such a change and other cheaper alternatives. That there are no relevant communications on this issue is simply not credible.

- **Requests to Which TCS's Response Appears Inadequate**

While TCS allegedly produced documents in response to Request Nos. 2, 3, 6, 7, 9, 10, 12, 15, 16, 17, 18, 19 and 20, its production is inadequate and incomplete. *See id*. at Ex. A. On July 26, 2016, Defendant revised the responses to Requests No. 17, 18, 19 and 20. *See id.* at Ex. B. These Requests had sought "[a]ll documents concerning Your replacement of touchscreen POS Devices with tactually-discernable POS Devices in California, New York, Texas, and Massachusetts, including all order invoices and delivery confirmations for specific store locations". TCS responded on July 26, 2016 that it had limited its production based on its belief that it did not have to provide discovery for all locations. Defendant further added that it would not even provide an estimate of the costs to provide new POS devices, and instead would only provide information with regard to each store a named Plaintiff visited. See id. ("Plaintiffs are not entitled to class discovery since they missed the class certification deadline and they lack standing to seek discovery with respect to stores they have never been to. In any event, Defendant has produced the roll-out schedule of the new POS devices, purchase orders for each state that a named plaintiff visited and the invoices, installation costs, and estimated expenses to provide the new POS devices *for each store a named Plaintiff has visited*.") (emphasis added).

Plaintiffs are entitled to discovery on every store based on Plaintiffs' allegations that TCS had a national systemic policy and practice of discrimination based on its failure to uniformly provide accessible POS Devices and an accessible Loyalty Program. TCS's attempt to limit discovery to a handful of locations is impermissible.

In response to Request No. 7, which sought "[a]ll documents that concern any planning, development, testing, implementation, decision making, function and/or any cost-benefit analyses undertaken with respect to the plastic overlay used in and/or removed from Your retail stores and described and depicted in the Amended Complaint," Defendant again did not produce the type of responsive document that one would expect to find in this type of litigation. It is not believable that no analysis or review was done regarding the cost of these overlays, how they were designed, or their procurement. No documents were produced discussing training for store managers on the implementation or use of these overlays. Also missing are any documents regarding the decision to remove these overlays from use, which TCS appears to have done.

In sum, Plaintiffs have legitimate concerns regarding the sufficiency of Defendant's document and ESI production. Defendant's failure to produce responsive documents and ESI is either a failure to preserve evidence, or a failure to adequately search for and produce it. It is unclear what actions Defendant took to preserve and search for ESI and other documents responsive to *any* of the document Requests. Given the inexplicable lack of responsive documents, Plaintiffs' request that this Court schedule an evidentiary hearing regarding Defendant's efforts to preserve and search for documents responsive to Plaintiffs' requests for production.

      **C.**    **Defendant's Assertion that It Has Complied with ESI Discovery, But Plaintiffs Are Refusing to Cooperate, is Blatantly False**

Defendant asserts that "Plaintiffs have all the documents they are entitled to," even though they know this is false. First, Defendant freely admits that at this late stage of discovery they still have not searched electronic databases for ESI. *See* Def.'s Opp. Br. at 9 (admitting that it wasn't until the June 16 call that Defendant agreed to search electronic databases and produce ESI responsive to Plaintiffs' document requests; "During the June 16 call, Defendant

agreed to search electronic databases"); at 3 (admitting that as of June 21, 2016, defense counsel had not conducted an ESI search and had not even identified search terms for an ESI search; "Defendant does not want to conduct an expensive search just for Plaintiffs to inevitably complain that it is inadequate"); at 15.  TCS has apparently failed to search for responsive electronic documents without any valid justification.  TCS has produced certain emails, which indicated to Plaintiffs that Defendant must have conducted some search of electronic documents.  Yet, when TCS asked Plaintiffs to provide search terms and then refused to identify what searches it intended to produce, it became clear that TCS had failed to conduct any legitimate search of electronic discovery at all.  Plaintiffs request that this Court compel TCS to describe the electronic discovery searches it has already conducted, the custodians it has identified, and the terms it has used.  Only then can Plaintiffs and the Court be in a position to ensure that the searches are done fully and properly.

### D. Defendant's Case Law Is Distinguishable

In its Opposition Brief, Defendant cites to a slew of cases that are legally distinguishable and not on point with the facts or legal issues in this case.  None of these cases were decided by the First Circuit Court of Appeals, or any Massachusetts District Court.  Defendant appears to have pulled from a brief filed in another Court in another Circuit, rather than point to relevant controlling authority in the First Circuit. *See e.g.* Def. Opp. At 4 (citing to cases from the 8th Circuit, California, Georgia and Indiana).  These cases are also factually irrelevant. *See e.g. Whitesell Corp. v. Electrolux Home Products Inc.*, No. CV 103-050, 2015 WL 5316591, at *5 (S.D. Ga. Sept. 10, 2015) (where counsel's "conferring" consisted of one brief email and then filing a motion for sanctions two days later); *see also Keithley v. The Home Store.com, Inc.*, No. C-03-04447 SI EDL, 2008 WL 2024977, at *1 (N.D. Cal. May 8, 2008) (court found that

plaintiff's act of sending of one written letter regarding meeting and conferring and then filing the motion for sanctions the next day was insufficient but noted that "although Plaintiff's motion is denied for failure to meet and confer, the Court does not condone Defendants' inadequate response to Plaintiff's requests for admission and is troubled by Defendants' conduct regarding this motion.").

Defendant devotes almost a page of its brief to a block quote from the out-of-circuit case *Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc*., 339 F.3d 180, 186 (3d Cir. 2003).  In that case, plaintiff's counsel refused to give defense an extension of time to answer interrogatories, and moved to compel the day after the thirty-day period expired.  The court granted an additional ten days for defendant to comply.  Five days after the Defendant responded, plaintiff's counsel sent a letter which gave defendant until the end of the following day to inform plaintiff whether it would respond to its list of concerns.  The court deemed this behavior an insufficient meet and confer.  In contrast to *Naviant*, here, the meet and confer letter was sent on June 3, 2016.  Multiple emails occurred after the letter, and a telephonic conversation was had on June 16, 2016, which led only to further delay and lack of responsiveness from TCS's counsel.

## II.     Defendant Does Not Have The Authority To Determine The Parameters of Discovery

Defendant makes the incredible argument that "[u]nless and until the Court grants Plaintiffs permission to file a motion for class certification, Plaintiffs are not entitled to any class discovery." Def.'s Opp. Br. at 10, 16.  There has been no Court ruling that has stayed discovery in this case with regard to class discovery.  Defendant has not moved for this relief, and cannot independently determine that it does not have to comply with discovery rules.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Fed. R. Civ. P. 26*.

As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to a claim or defense in the action. There is no basis for Defendant to withhold relevant discovery on issues related to class certification and Defendant has neither sought nor received an Order from this Court permitting it to avoid discovery on the merits of the case and class-wide issues. *See In re Plastics Additives Antitrust Litig*., 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004) (Courts have recognized that "the distinction between merits-based discovery and class-related discovery is often blurry, if not spurious."). TCS has not moved to bifurcate discovery and has not sought to separate discovery of class certification issues from discovery of merits issues. In sum, TCS does not have the right to single-handedly determine the parameters of discovery and must be ordered to comply with Plaintiffs' reasonable requests. *See Danny B. ex rel. Elliott v. Raimondo*, 784 F.3d 825, 835 (1st Cir. 2015) (stating that it is an abuse of discretion for a district court to impose discovery restrictions that preclude a suitor from the legitimate pursuit of evidence supporting her cause of action, and noting that the denial of discovery can be prejudicial).

### III. The 30(b)(6) Deposition Notice

Ms. Manson was identified as a deponent by Plaintiffs early on in this litigation, and she was separately noticed for deposition on November 4, 2015. Defendant, however, was steadfast in its refusal to make her available for deposition, or to provide any of the requested documents prior to her deposition. The conversation contained in the email chain referred to in Exhibit B of

13

the Chilleen Declaration ("Exhibit B emails") revolved solely around the difficulty in scheduling Ms. Manson for this individual deposition, because Defendant's counsel would not confirm their availability to represent her on any dates, nor would they agree to produce documents prior to her deposition. The Exhibit B emails were discussing when Ms. Manson could be deposed for this *separately noticed* deposition, not the 30(b)(6) deposition, and covered when discovery would be produced for the separately noticed deposition so that the deposition would be worthwhile.

As the email chain shows, TCS's counsel would not make Ms. Manson available for this deposition – they provided dates that she was available to be deposed for the separately noticed deposition, but the dates were an empty offer of availability given that the email explicitly stated that counsel for Joan Manson, Greg Hurley, was not necessarily free on any of those dates. Chilleen Decl. Ex B, at 3 ("I am waiting to hear back from Greg Hurley (who will be defending the deposition) regarding his availability on those dates. I will have those to you sometime next week."). As the email chain shows, an entire month passed without Sheppard Mullin responding with a date that Joan Manson could genuinely be deposed.

In the time after Joan Manson was noticed for her individual deposition, Plaintiffs issued their 30(b)(6) deposition notice. This notice was issued on April 29, 2016. In the middle of May, on the same email chain that was discussing Joan Manson's availability for a deposition noticed back in November 2015, counsel for TCS stated that Joan Manson was also "our PMK". In that email, he stated she was only available in the first week of June for her deposition and still refused to provide any responsive documents pursuant to the Schedule A attached to the 30(b)(6) notice. Plaintiffs admit that they did not catch this email reference to Joan Manson being the "PMK" as TCS's response to their 30(b)(6) deposition notice.

14

Given that the entire email chain was discussing Manson's individual deposition, and not the 30(b)(6) deposition, it is easy to see how Plaintiffs could miss this reference. In fact, Plaintiffs' failure to recognize this cryptic email referring to a "PMK" becomes even more understandable given Defendant's subsequent conduct, in which Defendant made no attempt to inform Plaintiff that Joan Manson was the 30(b)(6) designee. The formal response from Defendant to the 30(b)(6) notice, <u>stated only that</u>: **"No deponent will be produced on May 26, 2016**," a clear violation of F.R.C.P. 30(b)(6) given that TCS did not move for a protective order. *See* Pls.'s Mot. to Compel at Ex. 2.

In this same formal response to the 30(b)(6) request, Defendant did not identify Joan Manson as the 30(b)(6) designee, although it could and should have. Defendant's reliance on an email chain on a completely different subject matter, one which was discussing Ms. Manson's availability in an entirely different context, to inform Plaintiffs that she would also be the 30(b)(6) witness – when Defendant's formal 30(b)(6) response only alleged that no witness would be produced on May 26, 2016 – is misplaced. On the call that occurred on June 16, 2016 counsel for TCS <u>never brought up the fact that an email was sent in May identifying Joan Manson as the 30(b)(6) deponent</u>. Instead, counsel stated that they were now identifying Joan Manson as the deponent. While Plaintiffs apologize for the oversight in failing to see this obscure "PMK" email reference, Defendant's obstructionist response intentionally confused this issue. In addition, Defendant conveniently ignores the fact that <u>TCS objected to each and every 30(b)(6) deposition topic in its entirety and still have refused to produce the documents identified in the Schedule A to the 30(b)(6) notice</u>. *See id.* Defendants have stated affirmatively that they will obstruct every topic covered in this 30(b)(6) deposition, which will only result in the parties having yet another discovery dispute.

15

## IV. It Is Wholly Inappropriate To Make A New Substantive Argument Regarding Standing In A Reply Brief to A Motion to Compel

In an apparent effort to distract the Court from the issues raised in Plaintiffs' Motion, Defendant is using their Opposition Brief to the Motion to Compel as an opportunity to introduce an argument unrelated to discovery. Defendant is raising a substantive argument with regard to standing, arguing that Plaintiffs lack standing to represent a class of blind TCS patrons as to stores they have never been to. First, this argument should not be considered by the Court because it is inappropriately raised in an opposition brief involving a discovery dispute. Second, this argument confuses the issues of individual standing with the secondary issue of class certification under Rule 23. Plaintiffs do not need individual standing as to the other Container Store locations because this is a class action, and it is sufficient that they have individual standing as to the identified stores.

Plaintiffs have asserted a class action suit challenging Defendant's systemic failure to comply with the ADA and state anti-discrimination laws. Because this is a class action under Rule 23, at this stage, Plaintiffs are required only to show that they possess individual standing to bring this claim with respect to the identified Container Store locations, which they have done. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 404 (D. Mass. 2013) ("once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants.") (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 517 (6th Cir.1976)); *see also Indergit v. Rite Aid Corp.*, No. 08–9361, 2009 WL 1269250, at *5 (S.D.N.Y. May 4, 2009) (collecting cases that held named class action plaintiff needs only individual standing to have standing in class action).

The issue as to whether Plaintiffs can properly challenge Defendant's polices as they apply to TCS's entire POS device systems and Loyalty Program as named plaintiffs in a class

16

action is not an issue of standing, but one of class certification. As such, this issue should be resolved at the class certification stage of the litigation. *See e.g. Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D. 169, 174 (D. Mass. 2012) (noting that once a plaintiff establishes his own standing, the question of whether a plaintiff will be able to represent the putative class "depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure"); *see also Newberg on Class Actions* § 2.6, *Standing to litigate what? The relationship between the class representatives claims and those of absent class members* (5th Ed., June 2016 Update); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 307 (3d Cir. 1998) (Beyond establishing individual standing, there is "'no further separate class standing requirement in the constitutional sense.'") (quoting *Newberg on Class Actions* § 2.05 at 2–29 (3d Ed.1992)); *see also Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (finding that the conclusion that the named plaintiff in a class action is "real and immediate" "does not automatically establish that appellant is entitled to litigate the interest of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciablity to the ability of the named representative to 'fairly and adequately protect the interests of the class.' ") (quoting Fed.R.Civ.P. 23).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Compel.

Respectfully submitted this 27th day of July, 2016.

| | |
|---|---|
| *s/ Jeremy Weltman* | 60 Walnut Street, 4th Floor |
| Jeremy Weltman, 662293 | Wellesley, MA 02481 |
| KERSTEIN, COREN & | Tel: 781.997.1600 |
| LICHTENSTEIN LLP | Fax: 781.997.1633 |

jweltman@kcl-law.com

Jana Eisinger (pro hac vice)
MARTINEZ LAW GROUP, P.C.
720 South Colorado Boulevard
South Tower, Suite 1020
Denver, CO 80246
303.597.4000
eisinger@mlgrouppc.com

*s/ Scott LaBarre*
Scott C. LaBarre (pro hac vice)
LABARRE LAW OFFICES, P.C.
1660 South Albion Street, Suite 918

Denver, CO 80222
303.504.5979
slabarre@labarrelaw.com

Timothy Elder (pro hac vice)
TRE LEGAL PRACTICE, LLC
4226 Castanos Street
Fremont, CA 94536
410.415.3493
telder@trelegal.com

Attorneys for Plaintiffs and all Other
Individuals Similarly Situated

## CERTIFICATE OF SERVICE

I, Jeremy Y. Weltman, certify that on this 28th day of July, 2016, I caused a true copy of the foregoing *Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion to Compel* to be filed with the Clerk of the United States District Court for the District of Massachusetts through the Court's Electronic Case Filing system ("ECF") and to be served through ECF upon counsel of record, with paper copies sent to any person indicated on ECF as a non-registered participant:

Gregory F. Hurley, Esq.
Michael J. Chilleen, Esq.
Sheppard Mullin Richter & Hampton
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
ghurley@sheppardmullin.com
mchilleen@sheppardmullin.com

Howard E. Stempler, Esq.
Seder & Chandler LLP
339 Main Street, Suite 300         */s/ Jeremy Y. Weltman*
Worcester, Massachusetts 01608     Jeremy Weltman, Counsel for Plaintiffs
hstempler@sederlaw.com