UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NATIONAL FEDERATION OF THE BLIND, on
behalf of their members and themselves,
MARK CADIGAN,
MIKA PYYHKALA,
LISA IRVING,
ARTHUR JACOBS,
JEANINE KAY LINEBACK,
and HEATHER ALBRIGHT, on behalf of
themselves and all others similarly situated,
    Plaintiffs,

v.

THE CONTAINER STORE,
    Defendant.

Civil Action No. 15-12984-NMG

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT (#148) AND PLAINTIFFS' MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT (#161).

KELLEY, U.S.M.J.

I. Introduction.

This is a putative class action,[1] alleging discrimination in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181 *et seq.*, and the applicable consumer protection and discrimination laws of Massachusetts, California, New York, and Texas.

On July 15, 2019, plaintiffs, the National Federation of the Blind (NFB) and six blind individuals, filed the present motion for leave to file a third amended complaint (#148), which defendant, The Container Store, opposed. (#153.) Before the court could rule on their motion,

---

[1] Plaintiffs moved to certify two proposed nationwide classes, seven proposed state subclasses, and a "term class," on September 9, 2019. (#166.) Plaintiffs appear to define these classes based on the definitions they provided in their second amended complaint and their proposed fourth amended complaint, discussed below. (#181 at 6–7.) Plaintiffs' motion to certify remains pending.

1

plaintiffs filed a motion for leave to file a fourth amended complaint (#161), which defendant also opposed. (#162.)[2]

## II. The Facts.

Unless otherwise indicated, the court takes the following facts from plaintiffs' second amended complaint (#109), the operative pleading.

The NFB is a non-profit corporation and "the largest organization of blind and low-vision people in the United States." *Id.* ¶ 26. It aims to achieve equality for the vision-impaired by providing, among other services, "advocacy services and protection of civil rights, development and evaluation of technology, and support for blind persons and their families[.]" *Id.* According to plaintiffs' second amended complaint, defendant promotes itself as a national "specialty retailer of storage and organization products . . . ." *Id.* ¶ 35. Plaintiffs allege that, as of the date of the second amended complaint, defendant operated seventy retail stores in the United States, with three in Massachusetts, thirteen in California, five in New York, and twelve in Texas. *Id.* ¶ 34.[3]

Plaintiffs claim that defendant has thwarted the NFB's efforts to achieve equality for the visually-impaired and has discriminated against blind customers like the individual plaintiffs by violating the ADA and various state laws. *Id.* ¶ 26. Specifically, plaintiffs allege that defendant's point-of-sale (POS) devices are not accessible to the individual plaintiffs in Massachusetts, California, New York, and Texas and other blind customers throughout the nation, because they

---

[2] On July 20, 2015, plaintiffs filed the original complaint against defendant. (#1.) Plaintiffs filed an amended complaint on September 11, 2015 (#17) and a second amended complaint on November 4, 2016 (#109), after the court granted them leave to do so. (#107.) Defendant filed a motion for summary judgment as to all counts within plaintiffs' second amended complaint on September 23, 2019. (#176.) Defendant's motion for summary judgment remains pending.

[3] According to plaintiffs' proposed third and fourth amended complaints, this number has since increased to ninety-three stores nationwide, with three in Massachusetts, thirteen in California, six in New York, and thirteen in Texas. (#148-1 ¶ 34; #161-1 ¶ 38.)

use a visual, touch-screen interface, instead of tactually-discernable keypad surfaces. *Id.* ¶¶ 3, 81–82, 84–85, 90–91, 93–94, 96–97. Consequently, blind customers cannot independently enter a personal identification number (PIN) to make a debit card purchase, or engage in a credit card transaction that requires a PIN. *Id.* ¶¶ 2–3. Plaintiffs also allege that defendant does not provide equal access for blind customers to the benefits of its loyalty program, POP! – Perfectly Organized Perks (the loyalty program). *Id.* ¶ 7.[4] Because blind customers such as the individual plaintiffs cannot read the kiosks available to sighted customers to sign up for the program, they cannot independently enter their email addresses or telephone numbers required to access the program or register their purchases as required by the program. *Id.* ¶ 8. As part of their requested relief, plaintiffs seek declaratory judgments that defendant violated the ADA and various state laws, in that it failed to take measures "reasonably calculated to ensure" that its POS Devices and its loyalty program would be "fully assessible to, and independently usable by, blind and visually-impaired individuals." *Id.* at 59.[5]

Additionally, plaintiffs allege that, after they commenced the lawsuit, defendant implemented "an extensive set of Terms and Conditions that it require[d] customers to read and approve before enrolling in the Loyalty Program" (terms and conditions). *Id.* ¶ 14. These terms and conditions stated that all customers' claims were to be arbitrated (the arbitration provision). *Id.* The terms and conditions could be altered unilaterally by defendant at any time. *Id.* Because customers were required to read the terms and conditions and the arbitration provision, "found at

---

[4] Defendant's loyalty program provides benefits to customers who enroll, "including special discounts and rewards, and the ability to return any product for a full refund without a receipt." (#109 ¶ 7.) In order to enroll in the program and continue to receive its benefits, one must provide one's private email address or phone number and register each individual purchase one makes. *Id.* ¶ 8.

[5] Plaintiffs seek this same relief in both their proposed third amended complaint (#148-1) and their proposed fourth amended complaint. (#161-1.)

the very end of a long, multi-page document" and "not clearly emphasized[,]" *id.* ¶¶ 14, 16–17, it is likely that the individual plaintiffs, as well as other visually-impaired customers, never saw them. Therefore, in their second amended complaint, plaintiffs sought permanent injunctions, directing defendant "to take all steps necessary" to make its POS Devices and loyalty program "fully accessible" to the blind under the ADA and applicable state laws, requiring defendant to withdraw or cure the illegal aspects of the arbitration provision, and enjoining defendant from enforcing the arbitration provision against the individual plaintiffs and the proposed classes and subclasses. *Id.* at 59–60.

Plaintiffs further alleged in their second amended complaint that, although the district court had previously found the arbitration provision to be unenforceable as to the individual plaintiffs, defendant continued to require all of its customers to agree to the terms and conditions of the loyalty program. *Id.* ¶¶ 19–20.[6] On September 14, 2018, the First Circuit affirmed that the arbitration provision could not be enforced against the individual plaintiffs. *See Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 83–85 (1st Cir. 2018). Judge Gorton then entered an amended scheduling order, holding that any amendments and/or supplements to the pleadings were due by July 15, 2019. (#134.)

Plaintiffs filed a motion for leave to file a third amended complaint on the deadline to amend, July 15, 2019, approximately ten months after the First Circuit decision. The proposed complaint alleges that, while defendant recently appeared to have modified the terms and

---

[6] After the suit commenced, defendant filed a motion to compel arbitration of plaintiffs' claims and stay the litigation, based on the new terms and conditions and the arbitration provision. (#42.) This court issued a report and recommendation, finding the arbitration program unenforceable as to the individual plaintiffs who were members of the loyalty program, on March 11, 2016. (#62.) Judge Gorton issued an order adopting the report and recommendation on August 25, 2016. (#83.) On August 25, 2016, defendant filed an appeal to the First Circuit. (#95.) The matter was stayed pending the First Circuit's decision. (#108.)

conditions of the arbitration provision, it failed to cure many of the flaws and conditions that existed when the First Circuit deemed the terms and conditions unenforceable. (#148-1 ¶ 20.) Plaintiffs' proposed third amended complaint therefore seeks broader relief, including a permanent injunction, preventing defendant from including or reinstating the arbitration provision found unenforceable in the terms and conditions of its loyalty program. *Id.* at 62–63. Plaintiffs' proposed third amended complaint also seeks to add an additional Massachusetts subclass and three additional multistate subclasses to the class action, *id.* ¶¶ 106–10, and to include damages stemming from Massachusetts and California statutory notice requirements. *Id.* ¶¶ 68–69, 144.[7]

Before the court could rule on plaintiffs' motion for leave to file a third amended complaint, plaintiffs filed a motion for leave to file a fourth amended complaint. (#161.) Plaintiffs' motion is based on the fact that defendant recently adopted a credit card program[8] that is administered in the same way as its loyalty program and is, therefore, not fully accessible to defendant's visually-impaired customers. (#161-1 ¶¶ 13–17, 128.) Plaintiffs thus seek to amend their definition of the injunctive relief class to include blind individuals affected by defendant's credit card program. (#161 at 2.)[9] They maintain that they first learned of the credit card program at defendant's

---

[7] Although plaintiffs' allegations of damages are vague, in the proposed third amended complaint plaintiffs appear to be referencing a demand letter they sent to defendant pursuant to Mass. Gen. Law 93A, § 2 in 2015, and a preliminary notice and demand for corrective action they sent to defendant pursuant to Cal. Civ. Code § 1782(2) in 2016. (#148-1 ¶¶ 68–69.)

[8] According to plaintiffs' proposed fourth amended complaint, defendant's credit card program "provides significant benefits to customers, including a promotion that offers financing to cardholders with *no interest* for as long as 24 months. Although sighted customers can easily enroll in the credit card program on the same kiosks that are available at each checkout station, these kiosks cannot be independently operated by [defendant's] blind customers." (#161-1 ¶ 13.)

[9] Plaintiffs' proposed fourth amended complaint is the same as plaintiffs' third amended complaint in all other respects.

5

representatives' Rule 30(b)(6) depositions, taken on July 24–26, 2019, and that "these facts were subject to confirmation" at their expert's August 16, 2019 inspection. *Id.* at 1.

For the following reasons, both of plaintiffs' motions are denied.

III. Discussion.

A. Plaintiffs' Motion for Leave to File a Third Amended Complaint.

Plaintiffs argue that they should be permitted to file their proposed third amended complaint because defendant failed to "immediately alter" its arbitration provision following the First Circuit's September 2018 decision. (#148 at 1.) Plaintiffs also vaguely assert that they seek to amend their complaint "to include additional class allegations (sounding under the Consumer Protection Statutes of both California and Massachusetts) arising from information and changed circumstances since [they] previously amended their Complaint[,]" and "claims based on statutory requirements for amendment that have now been fulfilled." *Id.* Defendant counters that plaintiffs provide no explanation for their ten-month delay in seeking amendment based on the First Circuit's decision. (#153 at 9.) Defendant also argues that allowing plaintiffs to file their proposed third amended complaint will prejudice them because the June 31, 2019 deadline for written discovery and the August 31, 2019 deadline for fact witness depositions set by Judge Gorton (#134) have already passed. (#153 at 9–10.) The court agrees that plaintiffs' arguments in favor of amendment lack merit, due to plaintiffs' undue delay in filing for leave and the prejudicial impact that amendment would have on defendants.

Federal Rule of Civil Procedure 15 provides that, where a motion to amend a pleading falls within the court's deadline, "[t]he court should freely give leave [to file an amended complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "a district court may deny leave to amend when the request is characterized by undue delay, bad faith, futility, or the absence of due

diligence on the movant's part." *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013) (internal citations and quotation marks omitted); *Turner v. Hubbard Sys., Inc.*, No. 12-cv-11407-GAO, 2015 WL 3743833, at *2 (D. Mass. June 15, 2015) (citing *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).

"[U]ndue delay, on its own, may be enough to justify denying a motion for leave to amend." *Hagerty ex rel. U.S. v. Cyberonics, Inc.*, 844 F.3d 26, 34 (1st Cir. 2016) (citing *Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 20 (1st Cir. 2013)). "[A] movant has '[at the very least] the burden of showing some valid reason for his neglect and delay.'" *Id.* (quoting *Perez v. Hosp. Damas, Inc.*, 769 F.3d 800, 802 (1st Cir. 2014)). Courts may consider "[w]hat the plaintiff knew or should have known and what he did or should have done" in evaluating whether a movant has carried the burden. *Id.* (quoting *Leonard v. Parry*, 219 F.3d 25, 30 (1st Cir. 2000)). "Regardless of context, the longer a plaintiff delays, the more likely the motion to amend will be denied[.]" *Steir*, 383 F.3d at 12 (citing *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52–53 (1st Cir. 1998)). "Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy . . . .'" *Id.* at 12 (quoting *Acosta-Mestre*, 156 F.3d at 52).

The decision in *Zullo v. Lombardo (In re Lombardo)*, 755 F.3d 1 (1st Cir. 2014), illustrates what may constitute "undue delay." There, plaintiff attempted to amend his complaint more than seventeen months after filing his original complaint. *Id.* at 4. Although plaintiff had since hired new counsel, his new attorney did not seek leave to amend until four months after being hired, and only after he filed a motion for summary judgment and "the court informed him that a claim under a different statutory subsection might have fared better than the claim actually made." *Id.* The court

7

concluded that amendment was untimely because "all of the relevant facts had [long] been settled[,]" and "the law had not changed since [the] case's inception." *Id.* Similarly, in *Hagerty*, the First Circuit denied the plaintiff's motion to amend as untimely when he attempted to file it more than two-and-a-half years after filing his initial complaint, over fourteen months after filing his first amended complaint, and more than four months after he should have known about the deficiencies in his first amended complaint. *See Hagerty*, 844 F.3d at 30–31, 34; *see also Nikitine*, 715 F.3d at 391 (internal citations and quotation marks omitted) (district court properly denied motion for leave to amend because this was "not a case of new allegations coming to light following discovery, or of previously unearthed evidence surfacing"); *Palmer v. Champion Mortg.*, 465 F.3d 24, 31 (1st Cir. 2006) (same).

As to prejudice, the First Circuit has ruled that, even if a plaintiff's "late filing of [a] proposed amendment was not *per se* a sufficient reason" for a district court to deny his motion for leave to amend his complaint, "the prejudice to [defendant] resulting from the re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial strategy" would justify denying the motion. *Acosta-Mestre*, 156 F.3d at 52 (affirming denial of plaintiff's motion to file a second amended complaint, attempting to add an additional defendant, when plaintiff filed his motion at least six months after he learned of the proposed additional defendant's potential liability and when discovery was set to conclude in one month); *see also Steir*, 383 F.3d at 11–13 (denying motion to amend filed after discovery had closed).

Here, plaintiffs offer no explanation for their delay in seeking to file a third amended complaint. Although they technically filed their motion for leave within the deadline prescribed by the district court (albeit on the last day amendments were due), similar to *Hagerty*, their motion came nearly four years after they filed the initial complaint and amended complaint, and nearly

8

three years after they filed the second amended complaint. Their motion also comes approximately ten months after the First Circuit's decision and approximately seven months after defendant revised its arbitration program in December 2018. (#148-1 ¶¶ 187, 200.) While the court is unable to decipher when exactly plaintiffs became aware that defendant failed to "immediately alter" its arbitration program or correct any of the deficiencies they still perceived, the court finds it inexplicable that they would not have discovered the alteration and any perceived deficiencies until seven months after the fact, given the ongoing litigation. Like the plaintiffs in *In re Lombardo*, *Nikitine*, and *Palmer*, plaintiffs cannot show that they discovered any new evidence, not previously available, following defendant's altering of its arbitration program.[10] Furthermore, allowing plaintiffs to file a third amended complaint would either preclude defendant from conducting discovery on the new claims, or require the parties to re-open discovery, increasing costs and delaying this litigation. Permitting plaintiffs to file the proposed third amended complaint would be especially questionable in light of the First Circuit's decision in *Acosta-Mestre*, where the court concluded that amendment would be inappropriate, even though the deadline for both written discovery and fact witness depositions had not yet passed. 156 F.3d at 53 ("Rule 15(a)'s liberal

---

[10] Defendant also argues that plaintiffs fail to fully develop their arguments regarding "changed circumstances" and recently-fulfilled "statutory requirements[,]" that plaintiffs failed to meet and confer before filing their motion for leave in violation of Local Rule 7.1(a)(2), and that plaintiffs failed to file an affidavit evidencing new facts in support of their motion, in violation of Local Rule 7.1(b)(1). (#153 at 4–5, 7.) As previously explained, in addition to the revised arbitration program, these changed circumstances and recently-fulfilled "statutory requirements" appear to involve statutory demand letters plaintiffs sent to defendant in 2015 and 2016. (#148-1 ¶¶ 58–59.) Based on the foregoing case law, which holds that delays of several months were unjustified, the court agrees with defendant that "[p]laintiffs' failure to explain the purpose of these allegations" and why they could not have been made sooner, "together with the fact that the letters were sent 3–4 years ago[,]" mandates denial of plaintiffs' motion for leave to file a third amended complaint, notwithstanding any violations of the Local Rules. (#153 at 7.)

amendment policy seeks to serve justice, but does not excuse a lack of diligence that imposes additional and unwarranted burdens on an opponent and the courts.").

> B. <u>Plaintiffs' Motion for Leave to File a Fourth Amended Complaint</u>.

Plaintiffs argue in support of their motion for leave to file a fourth amended complaint that they did not learn of defendant's credit card program until after the deadline to amend the pleadings had passed. (#161 at 1.) They also maintain that, unlike their proposed third amended complaint, their proposed fourth amended complaint adds no new claims or causes of action, but "simply revise[s their] injunctive and declaratory relief class[es]" to include those individuals affected by defendant's credit card program. *Id.* at 2. They further argue that, if amendment is not permitted, they will be "forced" to file a "new, virtually-identical" complaint for injunctive and declaratory relief to include claims related to defendant's credit card program, an inefficient use of the court's resources. *Id.*

Given the court's denial of plaintiffs' motion for leave to file a third amended complaint pursuant to Rule 15(a), plaintiffs' arguments in favor of filing a fourth amended complaint require minimal discussion. Rule 16(b)'s more stringent "'good cause' standard, rather than Rule 15(a)'s 'freely give[n]' standard, governs motions to amend [like this one] filed after scheduling order deadlines." *Flores-Silva v. McClintock-Hernandez*, 710 F.3d 1, 3 (1st Cir. 2013) (quoting *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008)). "The 'good cause' standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Id.* (quoting *Steir*, 383 F.3d at 12) (internal citations and quotation marks omitted). Prejudice to the opposing party, however, remains a relevant factor. *O'Connell v. Hyatt Hotels*, 357 F.3d 152, 155 (1st Cir. 2004)).

10

Plaintiffs' argument that they did not know, and could not could have known about, defendant's credit card program until after the pleading deadline set by the district court is disingenuous. A rudimentary Internet search revealed that defendant's credit card program was launched as early as July 2016, over three years before plaintiffs filed their motion for leave to file their proposed fourth amended complaint. *See* News, Synchrony Bank, The Container Store Launches Customer Financing Through Private Label Credit Card Program (Jul. 28, 2016), https://www.synchrony.com/the-container-store-launches-customer-financing-through-private.html; *see also* #162-1 ¶ 4 ("On July 12, 2016, [defendant] began offering a credit card to its customers in stores."). In addition to plaintiffs' lack of diligence in investigating defendant's credit card program, allowing plaintiffs to file their fourth amended complaint would prejudice defendant, for the same reasons allowing plaintiffs to file their third amended complaint would do so.

First Circuit case law also demonstrates that the possibility that plaintiffs may file a "new, virtually-identical" suit to include claims related to defendant's credit card program is not a sufficient reason to allow them to file the fourth amended complaint. *See Flores-Silva*, 710 F.3d at 5 (quoting *O'Connell*, 357 F.3d at 155)("Rule 16(b) allows district courts to manage their over-burdened caseloads[,] and 'litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril'")); *In re Lombardo*, 755 F.3d at 4 (citations omitted) ("courts straining to accommodate their case loads need to minimize the risk of continuances in order to provide dependable dockets serving efficient management and fairness to waiting litigants"); *Riofrio Anda v. Alston Purina, Co.*, 959 F.2d 1149, 1154–55 (1st Cir. 1992) (allowing plaintiff to amend nearly two months after deadline to do so had expired "would have nullified the purpose of [R]ule 16(b)(1)"). Allowing plaintiffs to

continually amend their pleadings, after the deadlines prescribed for amendment, written discovery, and now, fact witness depositions, have already passed, would clearly be an inefficient use of the court's resources and flout Rule 16(b)'s requirements.

IV. Conclusion.

For the foregoing reasons, plaintiffs' motion for leave to file a third amended complaint (#148) and plaintiffs' motion for leave to file a fourth amended complaint (#161) are DENIED with prejudice.

/s/ Page Kelley
M. Page Kelley
United States Magistrate Judge

February 3, 2020